STATE OF INDIANA    )
                    ) SS;
COUNTY OF LAKE      )

IN THE LAKE CIRCUIT/SUPERIOR COURT
SITTING AT CROWN POINT, INDIANA

CLERK LAKE

JEFFREY R. YESSENOW, M.D., )
          Plaintiff, )
  )
vs. )
  )
HILTON M. HUDSON II, M.D., )
individually; and d/b/a HILTON M. )
HUDSON, P.C., an Indiana Professional )
Corporation, and HILTON PUBLISHING, )
 INC., and Illinois Corporation; and )
LEROY J. WRIGHT, individually, and )
n/k/a WRIGHT CAPITAL GLOBAL )
EQUITIES, LLC, an Illinois Limited )
Liability Corporation; a/k/a LJW GLOBAL )
EQUITIES; d/b/a WRIGHT CAPITAL )
PARTNERS, LLC, an Illinois Limited )
Liability Corporation; f/k/a WRIGHT )
GROUP INTERNATIONAL HOLDINGS, )
LLC, )
          Defendants. )

CAUSE NO.

**45D10081 1PL00162**

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, DAMAGES AND INJUNCTIVE RELIEF AND RESTRAINING ORDER

Comes now the Plaintiff, JEFFREY R. YESSENOW, M.D., by counsel, Paul A. Rossi, *Law Office of Paul A. Rossi, LLC.,* pursuant to **Trial Rule 57, Indiana Rule of Civil Procedure,** and for his first cause of action against Defendants, HILTON M. HUDSON II. M.D., individually, d/b/a HILTON M. HUDSON, PC., HILTON PUBLISHING, INC., and LEROY J. WRIGHT, individually, n/k/a WRIGHT CAPITAL GLOBAL EQUITIES, LLC., d/b/a LJW GLOBAL EQUITIES, d/b/a WRIGHT CAPITAL PARTNERS, LLC., f/k/a WRIGHT GROUP INTERNATIONAL HOLDINGS, LLC., alleges and states as follows:

## COUNT I – DECLARATORY JUDGMENT

1.      This is an action for declaratory judgment pursuant to **Trial Rule 57, Indiana Rules of Civil Procedure** and **I.C. §34-14-1-1,** for the purpose of determining a question of actual controversy between and among the parties.

2.      At all relevant times the Plaintiff, Jeffrey R. Yessenow, M.D., (hereafter "Dr. Yessenow") was a licensed physician doing business in Town of Munster, Lake County, Indiana.

3.      At all relevant times the Defendant, Hilton M. Hudson II, M.D., (hereafter "Dr. Hudson") was a licensed physician conducting business as a professional corporation and engaged in the medical healthcare business in the State of Indiana under the business name of Hilton M. Hudson, P.C., with his principal corporate office located within the Town of Munster, Lake County, Indiana;. Defendant Hilton was also engaged in the publishing business in the State of Illinois as a closely-held corporation with its principal place of business located at 1639 45th Street, Suite 103, Munster, Lake County, Indiana, conducting said business under the name of Hilton Publishing, Inc.

4.      At all relevant times the Defendant, Leroy J. Wright, (hereafter "Mr. Wright"), was engaged in the venture capital business conducting business in the State of Indiana and Illinois under various foreign corporate names, *inter alia;* Wright Capital Partners, LLC and Wright Group International Holdings, LLC., with its his principal place of business located at 230 West Monroe, Chicago, Cook County, Illinois and currently is engaged in the investment banking business as Wright Capital Global Equities, LLC., under the assumed business name of LJW Global Equities in conjunction and/or in affiliation with DSI Investment Banking Services, Inc., located at John Hancock Tower, 875 North Michigan Avenue, Suite 3100, Chicago, Cook County, Illinois.

5.      That on or before February 3, 2006, a certain venture capital company, known as AIC Ventures and its affiliate NL Ventures, LLC., a Texas Corporation, engaged in the business of buying and selling real estate throughout the United States, offered to purchase the business holdings of TWG Illiana Surgery and Medical Center, Inc., consisting of four (4) medical and/or business offices located within the State of Indiana and one (1) medical and surgery center located within the State of Illinois.

6.      That on February 3, 2006, the venture capital company, AIC Ventures by its Illinois

Managing Partners, Michael Baucus and its Texas Managing Partner, Meredith Hardy, forwarded to TWG Illiana Surgery and Medical Center, Inc., a formal written Notice of Intent to Purchase, submitting an offer to purchase for the price of Seventeen Million Dollars ($17,000,000.00), the five (5) medical centers, namely, medical facilities located at: 1) 9050 West 81st Street, Justice, Illinois; 2) 8900 Broadway, Merrillville, Indiana; 3) 201 West 89th Street, Merrillville, Indiana; 4) 2001 South Route 41, Schererville, Indiana; and, 5) 9136 Columbia Avenue, Munster, Indiana.

7.      That the Notice of Intent to Purchase contained a Leaseback provision at Page 1, §6, wherein TWG Illiana Medical and Surgery Center, Inc., would lease back all of the five (5) subject medical facilities for a term of twenty (20) years for absolute-net rent of One Million Eight Hundred Sixty-Five Thousand Five Hundred and Seventeen Dollars ($1,865,517.00) annually or the equivalent of Fifteen Dollars and Twenty-Five ($15.25) Cents per square foot. The Purchase Offer further contained a provision at Page 2, §7, which mandated that Dr. Yessenow post an initial security deposit in an amount of twelve (12) months' rent, with the deposit taken in the form of cash or a Letter of Credit.

8.      That on before March 3, 2006, Dr. Yessenow was introduced to Alex Mazzanti, Private Client Group of National City Bank of the Midwest, by AIC Ventures, and its General Partner, Michael Baucus, for purposes of obtaining the mandatory line of credit in the amount of One Million Five Hundred Thousand Dollars ($1,500,000.00) to consummate the Purchase and Sale Agreement of TWG Illiana Surgery and Medical Center, Inc. to NL Ventures, and which sum represented the initial first year security deposit for the lease back portion of the transaction.

9.      That on or about March 8, 2006, TWG Illiana Surgery and Medical Center entered into a Sale and Purchase Agreement with NL. Ventures V, L.P., a Texas Limited Partnership, by AIC Net Lease Management V, L.P., a Texas Limited Partnership, by AIC OPCO V, L.P., a Texas Limited Partnership, by AIC Holdings V, LLC., a Texas Limited Liability Company pursuant to the terms of the contract as aforesaid, thereby selling and assigning its rights, interest and title to the aforementioned medical centers and offices for the negotiated sum of Eighteen Million Dollars ($18,000,000.00), and further entering into a lease back agreement with AIC Ventures and its affiliate, NL Ventures. The Sale and Purchase Agreement provide that on or before closing of the transaction, TWG Illiana Surgery and Medical Center, Inc., and/or one of its subsidiaries would merge with the corporate entity known as iHealthcare, Inc., an Indiana Corporation, which was and is

the parent company of a corporate entity known as Illiana Surgery and Medical Center, LLC, an Indiana Limited Liability Company. The 9136 Columbia, Munster, Indiana, Medical Office was owned by Dr. Yessenow and conveyed as part of the transaction, to Illiana Medical and Surgery Center, Inc.

10.     That on March 8, 2006, Dr. Yessenow entered into a Reimbursement and Security Agreement, with National City Bank with regard to the application for a Letter of Credit for the sum of One Million Five Hundred Thousand ($1,500,000.00) Dollars and Dr. Yessenow further enter into a Mortgage and Promissory Note with National City Bank securing the Letter of Credit with real estate located at 55 East Erie Street, Chicago, Illinois as collateral for the issuance of the Letter of Credit.

11.     That on March 17, 2006, National City Bank of Indiana, issued an Irrevocable Standby Letter of Credit to Dr. Yessenow for the sum of One Million Four Hundred Sixty-Seven Thousand Nine Hundred and Forty-Eight Dollars ($1,467,948.00), under Account No. SCL012247, with NL Ventures V TWG Illiana, L.P. of Austin, Texas as the Beneficiary. The Standby Letter of Credit further provided that the Letter of Credit was transferable successively and in its entirety up to the available amount in favor of any transferee assuming the transfer was legally compliant.

12.     That on March 30, 2006, Dr. Yessenow entered into an Indemnification Agreement with Defendants Hilton, individually and in his capacity as corporate officer of Hilton Publishing, Inc. In addition, Defendant Wright also executed the Indemnification Agreement, individually, and in his capacity as corporate officer of iHeathcare, Inc., and also in his capacity as corporate officer for Wright Capital Partners. LLC, and Wright Group International Holdings, LLC. See: Exhibit "A."

13.     That the Indemnification Agreement as aforementioned, provided that the merged corporations of TWG Illiana Surgery and Medical Center, Inc., and the corporate entity known as iHealthcare, Inc., was mandated to obtain a six (6) month Letter of Credit which secured the AIC Ventures sale and leaseback agreement, and which Letter of Credit was an integral part of the acquisition of TWG Illiana Surgery and Medical Center, Inc. The Agreement further provided that it was the intent of the parties that Dr. Yessenow would not be required or requested to renew the Letter of Credit beyond the six (6) month expiration date.

14.     That the Indemnification Agreement clearly provided that National City Bank would

only agree to issue the One Million Five Hundred Thousand ($1,500,000.00) Dollars, Letter of Credit contingent upon Dr. Yessenow executing a Promissory Note known as Loan No. 102449, secured by a Mortgage granted to National City Bank utilizing his real estate located at 55 East Erie Street, Chicago, Illinois as collateral for the Promissory Note, Mortgage and concomitant Letter of Credit.

15.     That the express purpose of the creation of the Indemnification Agreement by the parties was to protect, indemnify and hold harmless Dr. Yessenow, from any loss, costs, expenses, damage or injury to which Dr. Yessenow and/or his property may be exposed to, by virtue of the obligation owed to National City Bank.

16.     That Subsection 1(A), of the Indemnification Agreement provides that the Defendants shall pay to Dr. Yessenow, when due, any and all expenses, including attorney fees, which Dr. Yessenow may incur by virtue of the payment of the obligation owed to National City Bank to secure the Letter of Credit.

17.     That Subsection 1(B), of the Indemnification Agreement provides that the Defendants shall cause payment to be made to Dr. Yessenow on account of any liability, loss, damages, costs or expenses before Dr. Yessenow was required to make any payment or action taken to enforce or foreclose upon the Mortgage for the obligation relating to the Letter of Credit. It further provides that the Defendants would satisfy and discharge any judgment recovered against Dr. Yessenow promptly after entry thereof.

18.     That Subsection 1(C), of the Indemnification Agreement provides that in the event legal action is taken, the Defendants shall defend any such action at their expense contingent upon Dr. Yessenow's cooperation, and further providing that the Defendants may intervene in any such legal action.

19.     That Subsection 2, of the Indemnification Agreement provides that to secure the Defendant's obligation for indemnification, Hilton M. Hudson II, M.D., individually, and Hilton Publishing, Inc., along with Leroy J. Wright, individually, and Wright Capital Partners, LLC., Wright Group International Holdings, LLC., guarantee, jointly and severally, the full and timely payment and performance of all indemnifications duties and obligations pursuant to Section 1, of the Indemnification Agreement.

20.     That on September 8, 2006, Defendants Hudson and Wright, along with Heartland Holdings and TWG Illiana Surgery a Medical Center, Inc., requested that Dr. Yessenow extend the

Letter of Credit issued by National City Bank of Indiana on March 17, 2006. However, Dr.
Yessenow, based upon information and belief refused to extend the line of credit, but then National
City Bank of Indiana asserted that NL Ventures V TWG Illiana Surgery and Medical Center, L.P. as
assignee of the line of credit, would exercise their right to execute on the presentment for payment of
the Letter of Credit. Therefore, Dr. Yessenow faced with significant financial exposure, and in
contra-distinction with all promises and intentions of the parties and notwithstanding advice of
corporate counsel, made formal request to National City Bank of Indiana to extend the Letter of
Credit for a period of one (1) year.

21.    That on September 12, 2006, National City Bank of Indiana approved the extension of
the commercial Letter of Credit until September 17, 2007, whereupon Dr. Yessenow executed a
Modification Agreement to facilitate the extension up to September 30, 2007, and renewable for one
(1) additional year thereafter. National City Bank of Indiana charged Dr. Yessenow a flat fee of Ten
Thousand Dollars ($10,000.00) for the extension of the Standby Letter of Credit until September 20,
2008.

22.    That on September 26, 2006, Defendant Hudson, in his official capacity as Chairman
of the Parent Company Board, TWG Illiana Surgery and Medical Centers, Inc., further acknowledged
the existence and obligation owed to Dr. Yessenow for providing the commercial Letter of Credit and
Defendant Hudson executed an Assignment and Assumption of Ownership Interest in Munster
Medical Holdings, LLC., in his capacity as Chairman of the Board. The Assignment was effective
November 1, 2006, and provided in pertinent part that in consideration for Dr. Yessenow's providing
and extending a Letter of Credit for the sum of One Million Four Hundred Eighty-Seven Thousand
Nine Hundred and Forty-Eight Dollars ($1,467,948.00), all of the Heartland Memorial Hospital,
LLC's right, title and interest in and to seventeen and a half percent (17.5%) ownership interest in
Munster Medical Holdings, LLC.

23.    That on November 7, 2007, Dr. Yessenow, by his then Attorney, Robert Fitzsimmons,
of the Law Firm of Mayer-Brown, forwarded via Certified Mail a formal notice to each named
Defendant herein, pursuant to the capitalization terms set forth in the Indemnification Agreement,
effectively notifying Defendants that the Corporation failed to perform the obligations under the
Agreement for which they agreed to guarantee and indemnify the Plaintiff, Dr. Yessenow. The formal

notice sufficiently advised the Defendants that Dr. Yessenow has incurred significant liabilities and expenses and has continuing liability with respect to the obligation and that his collateral remains encumbered by virtue of the mortgage lien. The Notice further advised that the Defendants are legally responsible for any and all liabilities and expenses incurred pursuant to the Indemnification Agreement and until such time as all obligations are performed and the collateral is released and fully and finally discharged and the mortgage lien is satisfied. Since that time, neither Defendant, Hudson nor Wright, nor their respective closely-held corporations have engaged in meaningful dialogue to amicably resolve this controversy.

24.    That on March 5, 2008, National City Bank forwarded to Dr. Yessenow a Billing Advise under Letter of Credit No. SCL012247, indicating that the LaSalle Bank National Association as assignee, had made a draw from said Letter of Credit which was paid by National City Bank in the amount of One Million Four Hundred Sixty-Seven Thousand Nine Hundred and Forty-Eight Dollars ($1,467,948.00), and that Dr. Yessenow had incurred draw and transfer fees totaling One Hundred and Sixty-Five ($165.00) Dollars as a result of the transaction. See: Exhibit "B." In addition, on July 3, 2008, National City Bank forwarded a Commercial Loan Billing demanding payment of accrued interest on the letter of credit totaling Twenty-Five Thousand Five Hundred and Fifty-Six Dollars and Fifty-Seven Cents ($25,556.57), which billing statement was received by Dr. Yessenow on July 10, 2008, and is due and payable on July 17, 2008. See: Exhibit "C." Additionally, on October 3, 2008, National City Bank forwarded a Commercial Loan Billing, demanding payment of accrued interest on the letter of credit totaling Forty-Two Thousand Four Hundred and Thirty-Seven Dollars and Ninety-Seven Cents ($42,437.97), as well as late charges due in the sum of One Thousand Five Hundred Sixty-Two Dollars and Twenty-Three Cents ($1,562.23), and a total amount due of One Million Five Hundred Eleven Thousand Nine Hundred Forty-Eight Dollars and Twenty Cents ($1,511,948.20). The Commercial Loan Bill was received by Dr. Yessenow on or about October 10, 2008, and indicated a payment due date of October 17, 2008. See: Exhibit "D."

25.    That Plaintiff, Dr. Yessenow, has made diligent efforts to enter into a forbearance agreement with National City. Unfortunately, the efforts to enter into a forbearance agreement have not been resolved. For a period of greater than four (4) months, discussions and negotiations regarding a Forbearance Agreement have occurred involving Plaintiff, Dr. Yessenow, and

National City Bank. On October 20, 2008, National City mailed correspondence to Dr. Yessenow indicating that potentially, "National City Bank might consider a forbearance term of Ninety (90) days...". See: Exhibit "E". Since the October 20, 2008 correspondence, more than one (1) month has passed, and National City Bank has not provided or yet agreed to a forbearance agreement of the outstanding sum now due in excess of One Million Five Hundred Eleven Thousand Nine Hundred Forty-Eight Dollars and Twenty Cents ($1,511,948.20).

26.    That Plaintiff, Dr. Yessenow asserts that he has fulfilled all obligations under the terms of the Indemnification Agreement by applying for and obtaining a substantial commercial Letter of Credit from National City Bank of Indiana, requiring that he mortgage and encumber his real estate property which was provided as collateral for the Letter of Credit and which was utilized by Defendant's Hudson and Wright in the furtherance of their business and the Defendant's realized the benefits and advantages of the use of Dr. Yessenow's commercial Letter of Credit.

27.    That Plaintiff, Dr. Yessenow asserts that it was the clear intent of the parties that Defendants, Hudson and Wright would protect, indemnify and hold harmless Dr. Yessenow, from any loss, costs, expenses, damage or injury to which Dr. Yessenow and/or his property was exposed by virtue of the obligation owed to National City Bank and guarantee repayment of any and all costs and expenses incurred by Dr. Yessenow with respect to the Letter of Credit and to absolutely indemnify Dr. Yessenow with regard to the obligation so that his collateral would remain unencumbered by a mortgage lien or other related adverse actions by National City Bank to collect and enforce its equitable interest in Dr. Yessenow's real estate property.

28.    That Plaintiff, Dr. Yessenow, asserts he has made proper notice to Defendant's that the Corporation has failed to perform the obligations under the Agreement for which they agreed to guarantee and indemnify Dr. Yessenow and said notice sufficiently advised the Defendants that Dr. Yessenow has incurred significant liabilities and expenses with continuing liability with respect to the obligation and that his collateral remains encumbered by virtue of the mortgage lien. The Defendants have been properly placed on notice that they are legally responsible for any and all liabilities and expenses incurred pursuant to the Indemnification Agreement until such time as all obligations are performed and the collateral is released and fully and finally discharged and the mortgage lien is satisfied.

29.    That Defendant's Hudson and Wright undertook the obligation to indemnify Dr. Yessenow with regard to the commercial Letter of Credit and therefore owed an affirmative duty to Dr. Yessenow to deal in good faith and were contractually obligated, upon proper notice to indemnify Dr. Yessenow for any and all losses with regard to the commercial Letter of Credit to assure that his collateral remained unencumbered. However, Defendants Hudson and Wright have breached the duty owed to Plaintiff, Dr. Yessenow by acting in bad faith in failing and/or refusing to take action to indemnify Plaintiff pursuant to the terms of the Indemnification Agreement, when the loss to Dr. Yessenow cannot in good faith be disputed.

30.    That Defendant's Hudson and Wright have breached the terms of the Indemnification Agreement by failing and/or refusing to indemnify Dr. Yessenow for the contractual obligation of the Letter of Credit created by the draw from the line of credit which was paid by National City Bank in the amount of One Million Four Hundred Sixty-Seven Thousand Nine Hundred and Forty-Eight Dollars ($1,467,948.00), along with draw and transfer fees and other related flat rate fees and costs associated with the extension of the Letter of Credit.

31.    That a declaration clarifying the contractual obligations owed by Defendants Hudson and Wright to Plaintiff, Dr. Yessenow,  pursuant to the terms of the Indemnification Agreement dated March 30, 2006, would serve a useful purpose by declaring and determining the rights of the parties and affording relief from uncertainty, insecurity and controversy giving rise to this proceeding.

**WHEREFORE,** Plaintiff, JEFFREY R. YESSENOW, M.D., by counsel, *Law Office of Paul A. Rossi,* prays for a declaratory judgment against the Defendants, HILTON M. HUDSON II. M.D., individually, d/b/a HILTON M. HUDSON, PC., and HILTON PUBLISHING, INC., and LEROY J. WRIGHT, individually, and n/k/a LJW GLOBAL EQUITIES, d/b/a WRIGHT CAPITAL PARTNERS, LLC., f/k/a WRIGHT GROUP INTERNATIONAL HOLDINGS, LLC., as follows:

1.    Declare the rights and other legal obligations of the Plaintiff and Defendant by reason of the Indemnification Agreement dated March 30, 2006, entered into by the parties which is attached hereto as Plaintiffs Exhibit "A"

2.    Declare that the Indemnification Agreement executed by the parties is valid and mandates that the Defendants indemnify the Plaintiff for the contractual obligation of the Letter of Credit created by the draw from the line of credit which was paid by National City Bank in the amount of One Million Four Hundred Sixty-Seven Thousand Nine Hundred and Forty-Eight Dollars

($1,467,948.00), along with draw and transfer fees and other related costs associated with the extension of the Letter of Credit.

3.    Declare that Plaintiff is entitle to a Judgment against the Defendants in the amount of One Million Four Hundred Sixty-Seven Thousand Nine Hundred and Forty-Eight Dollars ($1,467,948.00), along with draw and transfer fees and other related flat rate fees and costs associated with the extension of the Letter of Credit and accrued interest and late charges.

4.    Declare that the Plaintiff is entitled to reasonable attorney's fees incurred in the pursuit of this declaratory judgment action.

5.    And for all other relief just and proper in the premises.

Respectfully Submitted,

By:

Paul A. Rossi, Esq.
*Law Office of Paul A. Rossi, LLC*
Attorney for Plaintiffs
Attorney I.D. No. 20346-98

## COUNT II – COMPLAINT FOR DAMAGES

Comes now the Plaintiff, JEFFREY R. YESSENOW, M.D., by counsel, Paul A. Rossi, *Law Office of Paul A. Rossi, LLC.,* and for his second cause of action against Defendants, HILTON M. HUDSON II. M.D., individually, d/b/a HILTON M. HUDSON, PC., HILTON PUBLISHING, INC., and LEROY J. WRIGHT, individually, n/k/a WRIGHT CAPITAL GLOBAL EQUITIES, LLC., a/k/a LJW GLOBAL EQUITIES, d/b/a WRIGHT CAPITAL PARTNERS, LLC., f/k/a WRIGHT GROUP INTERNATIONAL HOLDINGS, LLC., alleges and states as follows:

1-31.    Plaintiff incorporates by reference rhetorical paragraphs one (1) through thirty (30) of Count I of this Complaint, inclusive, as though specifically set forth herein.

32.    That as a direct and proximate result of Defendant Hudson and Wright's breach of duty and breach of contractual obligation, Plaintiff, Dr. Yessenow has suffered substantial damages.

33.    That as a direct and proximate result of Defendant Hudson and Wright's acts of bad

faith, Plaintiff, Dr. Yessenow has suffered an undeterminable amount of damages, and the amount of damages Dr. Yessenow has and will suffer is difficult to quantify.

34.      That as a result of Defendant Hudson and Wright's breach of duty, breach of contractual obligation and acts of bad faith, Plaintiff, Dr. Yessenow has been injured and will continue to be injured unless declaratory judgment is entered in his favor.

35.      That as a result of Defendant Hudson and Wright's breach of duty, breach of contractual obligation and bad faith, Plaintiff, Dr. Yessenow has lost goodwill and trade of many persons and entities with whom Dr. Yessenow otherwise would have had profitable business.

36.      That as a result of the Defendant Hudson and Wright's breach of duty, breach of contractual obligation and bad faith, Plaintiff, Dr. Yessenow, has suffered injury of reputation, credibility, standing in the community and damage to his excellent credit history and financial ratings.

37.      That the actions of Defendants Hudson and Wright, were taken without justification, were willful and wanton, made in bad faith and in reckless disregard for Dr. Yessenow's rights and interests under law and therefore, Dr. Yessenow is entitled to exemplary and punitive damages in an amount to deter Defendants Hudson and Wright from additional wrongful conduct in the future.

38.      That as a direct and proximate result of the actions of Defendants Hudson and Wright, Plaintiff, Dr. Yessenow has suffered substantial damages and is entitled to a sum reasonable to compensate Dr. Yessenow for his losses and damages.

     **WHEREFORE,** Plaintiff, JEFFREY R. YESSENOW, M.D., by counsel, *Law Office of Paul A. Rossi,* prays for a judgment against the Defendants, HILTON M. HUDSON II. M.D., individually, and d/b/a HILTON M. HUDSON, PC., HILTON PUBLISHING, INC., and LEROY J. WRIGHT, individually, n/k/a WRIGHT CAPITAL GLOBAL EQUITIES, LLC., a/k/a LJW GLOBAL EQUITIES, d/b/a WRIGHT CAPITAL PARTNERS, LLC., f/k/a WRIGHT GROUP INTERNATIONAL HOLDINGS, LLC., in an amount reasonable to compensate him for his losses, interest at a statutory rate, Court Costs, reasonable attorney fees, punitive and exemplary damages and for all other relief proper in the premises.

Respectfully Submitted,



By:

Paul A. Rossi, Esq.
*Law Office of Paul A. Rossi, LLC*
Attorney for Plaintiffs
Attorney I.D. No. 20346-98

## COUNT III – INJUNCTIVE RELIEF

Comes now the Plaintiff, JEFFREY R. YESSENOW, M.D., by counsel, Paul A. Rossi, *Law Office of Paul A. Rossi, LLC.,* pursuant to **Trial Rule 65, Indiana Rule of Civil Procedure,** and for his third cause of action against Defendants, HILTON M. HUDSON II. M.D., individually, d/b/a HILTON M. HUDSON, PC., HILTON PUBLISHING, INC., and LEROY J. WRIGHT, individually, n/k/a WRIGHT CAPITAL GLOBAL EQUITIES, LLC., a/k/a LJW GLOBAL EQUITIES, d/b/a WRIGHT CAPITAL PARTNERS, LLC., f/k/a WRIGHT GROUP INTERNATIONAL HOLDINGS, LLC., alleges and states as follows:

1-31.   Plaintiff incorporates by reference rhetorical paragraphs one (1) through thirty (30) of Count I of this Complaint, inclusive, as though specifically set forth herein.

32-38. Plaintiff incorporates by reference rhetorical paragraphs thirty-one (31) through thirty-seven (37) of Count II of this Complaint, inclusive, as though specifically set forth herein.

39.     That as a direct and proximate result of the above-referenced conduct by Defendant's Hudson and Wright, Plaintiff, Dr. Yessenow has sustained and will continue to sustain irreparable damages to his business, reputation and real estate property and he has no adequate remedy at law. Therefore, Plaintiff, Dr. Yessenow is entitled to an injunction enjoining Defendants Hudson, individually, or in his capacity as corporate officer of Hilton M, Hudson, P.C., and/or Hilton Publishing Company; and , Defendant Wright, individually, and d/b/a Wright Capital Global Equities, LLC., a/k/a LJW Global Equities or in his capacity as corporate officer of  Wright Capital partners, LLC., f/k/a Wright Group International Holdings, LLC., from attempting to take any action to waste, secrete, encumber or sell any assets, property or income and to restrain Defendants from withdrawing funds from any bank, savings and loan association and/or credit unions from personal or business accounts and assets without Order of this Court

40.    That Plaintiff, Dr. Yessenow has no adequate remedy at law for his injuries and it is impossible for Dr. Yessenow to determine the precise amount of damages that he will suffer if Defendants are not enjoined from wasting, secreting, encumbering or selling assets, property or income and Dr. Yessenow will continue to suffer irreparable harm if a freeze asset order is not entered by the Court.

41.    That there is no adequate remedy for Dr. Yessenow's loss of business, with third parties both past and prospective, nor the encumbrance of his real property by virtue of the significant One Million Four Hundred Sixty-Seven Thousand Nine Hundred and Forty-Eight Dollars ($1,467,948.00), mortgage lien that will be foreclosed upon by National City Bank.

42.    That Plaintiff, Dr. Yessenow is likely to prevail on the merits of his claim as is set forth above regarding Defendant's breach of duty, breach of contractual obligation and acts of bad faith.

43.    That the harm which will be suffered by Plaintiff, Dr. Yessenow, if injunctive relief is not entered, outweighs the harm to the Defendants if it is granted.

44.    That Plaintiff, Dr. Yessenow, has no adequate remedy under law since it would be pure speculation to place a dollar amount on the damages which will be suffered both presently and in the future by Plaintiff, Dr. Yessenow.

45.    That the interest of the public will not be disturbed by granting Plaintiff, Dr. Yessenow's motion.

46.    That Plaintiff, Dr. Yessenow will continue to suffer irreparable and immediate injury if a preliminary injunction is not entered as Plaintiff, Dr. Yessenow's real estate property will be foreclosed upon, which will cause further damage to his future business, reputation and standing in the community, further damage to his excellent credit standing and the potential for loss of substantial loss of monies received in rents and loss of equitable interest in his real estate.

47.    That no harm will result to the Defendants by the issuance of a preliminary injunction and freeze asset order, pending the determination of the issues raised in the Complaint for Declaratory Judgment.

**WHEREFORE,** Plaintiff, JEFFREY R. YESSENOW, M.D., by counsel *Law Office of Paul A. Rossi, LLC,* respectfully requests this Court issue a preliminary and permanent injunction to enjoin

the Defendants, HILTON M. HUDSON II. M.D., individually, and d/b/a HILTON M. HUDSON, PC., HILTON PUBLISHING, INC., and LEROY J. WRIGHT, individually, n/k/a WRIGHT CAPITAL GLOBAL EQUITIES, LLC., a/k/a LJW GLOBAL EQUITIES, d/b/a WRIGHT CAPITAL PARTNERS, LLC., f/k/a WRIGHT GROUP INTERNATIONAL HOLDINGS, LLC., from any act whatsoever attempting to take any action to waste, secrete, encumber or sell any assets, property or income and to restrain Defendants from withdrawing funds from any bank, savings and loan association and/or credit unions from personal and business account and assets without Order of this Court and to enter a freeze asset order *instanter* and for all other relief proper in the premises.

Respectfully Submitted,

By:

Paul A. Rossi, Esq.
*Law Office of Paul A. Rossi, LLC*
Attorney for Plaintiffs
Attorney I.D. No. 20346-98

## VERIFICATION

I affirm under penalties of perjury that the above and foregoing representations are true and correct to the best of my knowledge and belief.

Jeffrey R. Yessenow, M.D.

**SUBSCRIBED AND SWORN** to before me, a Notary Public, in and for said County and State, this 16th day of July, 2008.
21    November

Paul Rossi, Notary Public

Paul A. Rossi, Esq.
*Law Office of Paul A. Rossi, LLC*
725 East Commercial Avenue
Lowell, Indiana 46356
Telephone: (219) 690-1200
J://WinXP/Word/Data/LawOfficeRossi/Clientfile/Yessenow, Jeffrey R /Declaratory Action et al 7-1-08

## INDEMNIFICATION AGREEMENT

THIS AGREEMENT is made and entered into as of March _3/_, 2006 by and between **TWG Illiana Surgery and Medical Center, Inc.**, a Maryland corporation, and **iHealthcare, Inc.**, an Indiana corporation (collectively "Corporation") and **Jeffrey R. Yessenow, M.D.** (the "Obligor").

WHEREAS, Corporation was required to obtain a required a six (6) month letter of credit which secures the security deposit for the AIC sale and lease back which is an integral part of Corporation's acquisition of Illiana Surgery and Medical Center, LLC, an Indiana limited liability company; and,

WHEREAS, National City Bank of the Midwest (the "Bank") would only agree to issue such a six (6) month letter of credit upon the satisfaction of certain conditions including a requirement that, and in satisfaction of which, Obligor has executed a Promissory Note payable the Bank, known as Loan Number 102449, secured by a Mortgage likewise executed and duly granted to the Bank by Obligor (collectively the "Obligation"); and,

WHEREAS, Corporation and Obligor both hereby acknowledge their mutual understanding that Obligor does not intend to renew or otherwise extend the Obligation past the expiration of said six (6) month letter of credit; and,

WHEREAS, Corporation desires to protect Obligor from any loss, costs, expenses, damage or injury to which Obligor exposes himself or his property by reason of the Obligation by indemnifying and holding Obligor harmless with respect thereto as hereinafter set forth; and,

WHEREAS, Obligor wishes to obtain the same upon said terms; and,

WHEREAS, the parties intend this Agreement to be separate and apart from the Employment Agreement and any and all other agreements and understandings between the parties.

NOW, THEREFORE, for good and valuable consideration, the parties hereto, intending to be legally bound, hereby agree as follows:

1.   Indemnification.

      A.   Indemnity. Corporation shall pay or cause to be paid to Obligor, when due, any and all expenses incurred in the execution of the Obligation or in any manner connected therewith. Corporation shall at all times indemnify and save Obligor harmless from and against all liability, loss, damages, costs, and expenses, including counsel fees, which Obligor may for any cause at any time sustain or incur by reason of or in any way related to the Obligation, any continuation or renewal thereof, any modification, amendment, limitation, or extension thereof, or any new guaranty, obligation, or undertaking executed in place thereof.



EXHIBIT
"A"

B.    Payment by Corporation. Corporation shall cause payment to be made to Obligor on account of any such liability, loss, damages, costs, or expenses before Obligor is compelled to make any payment, or any action is taken to enforce or foreclose upon the Mortgage, on account of or in any way related to the Obligation. Corporation shall pay, upon demand by Obligor, the amount of any claim made upon Obligor under the Obligation, if Obligor determines in his discretion to pay such claim. Corporation shall satisfy and discharge any judgment recovered against Obligor pursuant to the Obligation promptly after the entry thereof, unless an appeal is taken and bonds, if any be required, to stay the collection or other enforcement thereof, including any sale of the property secured by the Mortgage, are procured and filed by Corporation. If a final judgment is entered against Obligor after appeal, Corporation shall satisfy and discharge such judgment. Corporation shall, in all instances, promptly obtain the complete release of the Mortgage and the full return of the property to which it attached.  Obligor may in his discretion make any payment sustained or incurred by reason of any of the foregoing, and Corporation shall promptly repay Obligor the amount of such payment, with legal interest thereon from the date of payment. Corporation shall, in all instances, furthermore pay any and all counsel fees and expenses which Obligor may for any cause at any time sustain or incur by reason of or in any way related to the Obligation, or in the enforcement of any of the indemnification duties and obligations of Corporation pursuant to this Agreement.

C.    Legal Actions. If any legal action is taken against Obligor under the Obligation, either jointly with Corporation or alone, Corporation shall defend such action at its own expense, and Obligor shall cooperate with Corporation in the defense thereof, or, at its election, assume the defense, at Corporation's expense. Obligor may join Corporation as party defendant in any legal action brought against him alone under the Obligation, and Corporation hereby consents to the entry of an order making it a party defendant.

2.    Guarantees. To secure Corporation's obligations for indemnification hereunder, Leroy Wright, individually, Wright Capital Partners, LLC, Wright Group International Holdings, LLC, Hilton M. Hudson II, M.D., individually, and Hilton Publishing, Inc. (collectively, "Guarantors") hereby guarantee, jointly and severally, the full and timely payment and performance of all indemnification duties and obligations of Corporation pursuant to Section 1, above.

3.    Notice. Any and all notices or any other communication provided for herein shall be given in writing in the same manner as and in all respects in accordance with Section 21 of the Employment Agreement between Obligor and Corporation dated October 13, 2005, even if said Employment Agreement has expired, been terminated, amended or modified.

4.    Invalid Provision. The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted.

5.    Binding Effect.  This Agreement shall be binding upon and inure to the benefit of Corporation and Obligor and their respective heirs, legal representatives, executors, administrators, successors and assigns.

6. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement among the parties and contains all of the agreements among the parties with respect to the subject matter hereof. This Agreement supersedes any and all other contracts, understandings or representations, either oral or in writing, among the parties hereto with respect to the subject matter hereof.

7. <u>Modification of Agreement</u>. This Agreement may be amended or revoked at any time prior to the death of Obligor only by a written agreement executed by Obligor and Corporation. No change or modification of this Agreement shall be valid unless the same be in writing and signed by Obligor and Corporation. No waiver of any provision of this Agreement shall be valid unless in writing and signed by the person or party against whom any such claim of waiver is made.

IN WITNESS WHEREOF, Corporation has caused this Agreement to be signed by its duly authorized officer and Obligor has hereunto set his hand and seal on the day and year first above written.

Corporation:

TWG ILLIANA SURGERY AND MEDICAL CENTER, INC., a Maryland corporation

By: _____
Leroy Wright, Chairman


iHEALTHCARE, INC., an Indiana corporation

By: _____
Leroy Wright, Chairman


Guarantors:

_____
Leroy Wright, individually


WRIGHT CAPITAL PARTNERS, LLC

By: _____
Leroy Wright, Manager

Page 3 of 4

WRIGHT GROUP INTERNATIONAL HOLDINGS, LLC

By: _____
      Leroy Wright, Manager

_____
Hilton M. Hudson II, M.D., individually

HILTON PUBLISHING, INC.

By: _____
      Hilton M. Hudson II, M.D., Chairman and
      Chief Executive Officer

Obligor:
_____
      Jeffrey R. Yessenow, M.D.

Page 4 of 4

# NationalCity.

**Billing Advice**

DATE: MARCH 5, 2008

ILLIANA SURGERY AND MEDICAL CENTER, LLC
701 SUPERIOR AVENUE
MUNSTER, IN 46321
ATTN: DR. JEFFREY YESSENOW

THE FOLLOWING CHARGES REPRESENT FEES UNDER OUR LETTER OF CREDIT
NO. SCL012247 AS FOLLOWS:

| DESCRIPTION OF FEES | AMOUNT |
|---|---|
| DRAW FEE: | 150.00** |
| FUNDS TRANSFER FEE: | 35.00 |
| TOTAL AMOUNT DUE | 185.00 |

**DRAW PAID IN THE AMOUNT OF $1,467,948.00 ON 3/5/08

BENEFICIARY: LASALLE BANK NATIONAL ASSOCIATION

REMIT TO:
P.O. BOX 5101 LOCATOR 01-7537
CLEVELAND, OH 44101-0101

MAKE CHECK PAYABLE TO NATIONAL CITY BANK
PLEASE INCLUDE LETTER OF CREDIT NUMBER ON CHECK

IF YOU HAVE ANY QUESTIONS REGARDING THIS INVOICE, CONTACT OUR GLOBAL
CLIENT CARE CENTER AT 1-800-NCC-INTL (622-4685)

VERIFIED BY: _____
BDB

CC: ALEX MAZZANTI
    PRIVATE CLIENT GROUP
    LOCATOR: 50-CL0120



**EXHIBIT**
" B "

# National City®

**Commercial Loan Bill**

NATIONAL CITY BANK 56
COMMERCIAL LOAN OPERATIONS
P.O. BOX 1030
OSHTEMO, MI 49077-1030

OFFICER      0129J-01

PRIVATE CLIENT - NORTHERN IL

CUSTOMER NUMBER 98-6422479-9                    DATE 07-03-08      PAGE      1

| OBLIGATION NUMBER | EFFECTIVE DATES FROM MO. DAY YR. | THRU MO. DAY YR. | BALANCE | RATE | AMOUNT DUE | PAYMENT TYPE |
|---|---|---|---|---|---|---|
| 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-3 | ADJ P 061708 | 071608 | 146794800 | 450 TOTAL | 2005176 550481 2555657 | INTEREST INTEREST |

LATE PAYMENTS ARE SUBJECT TO LATE CHARGE

BILLING INQUIRIES?   CALL CUSTOMER SERVICE AT 1-800-230-0304

Please detach and return lower portion of bill with payment

NATIONAL CITY BANK 56
COMMERCIAL LOAN OPERATIONS
P.O. BOX 1030
OSHTEMO, MI 49077-1030

Please forward payment to:

      OFFICER  0129J-01
      PRIVATE CLIENT - NORTHERN IL

      NATIONAL CITY BANK
      **COMMERCIAL SERVICES**
      P.O. BOX 1030
      OSHTEMO, MI 49077-1030

PRINCIPAL DUE
INTEREST/FEE DUE                    25,556.(
TOTAL AMOUNT DUE                    25,556.(
PAYMENT DUE DATE          07-17-08

AMOUNT ENCLOSED $

JEFFREY YESSENOW
808 KILLARNEY DR
DYER  IN    46311



**EXHIBIT**
" C "

| TRAN CODE | CUSTOMER/OBLIGOR NO. | INVOICE/OBLIGATION NO. | TRO | AMOUNT |
|---|---|---|---|---|
| 4320 | 9864224799 | 0096176763 | | 00000002555657 |

# Commercial Loan Bill

**National City.**

NATIONAL CITY BANK 56
COMMERCIAL LOAN OPERATIONS
P.O. BOX 1030
OSHTEMO, MI 49077-1030

OFFICER    0129J-01

PRIVATE CLIENT - NORTHERN IL

CUSTOMER NUMBER 98-6422479-9

DATE 10-03-08    PAGE    1

| OBLIGATION NUMBER | EFFECTIVE DATES FROM MO DAY YR | EFFECTIVE DATES THRU MO DAY YR | BALANCE | RATE | AMOUNT DUE | PAYMENT TYPE |
|---|---|---|---|---|---|---|
| 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-3 | PAST D | | | | 14679480 00 | PRIN |
| | 101708 | 000000 | 146794800 | | 00 | PRIN |
| | PAST D | | | | 3693316 | INTEREST |
| | 091708 | 101608 | 146794800 | 4 50 | 5504851 | INTEREST |
| | PAST D | | | | 156223 | LT CHG |
| | | | | TOTAL | 151194820 | |

LATE PAYMENTS ARE SUBJECT TO LATE CHARGE .

BILLING INQUIRIES?  CALL CUSTOMER SERVICE AT 1-800-230-0304

Please detach and return lower portion of bill with payment

NATIONAL CITY BANK 56
COMMERCIAL LOAN OPERATIONS
P.O. BOX 1030
OSHTEMO, MI 49077-1030

Please forward payment to:

OFFICER  0129J-01
PRIVATE CLIENT - NORTHERN IL

NATIONAL CITY BANK
COMMERCIAL SERVICES
P.O. BOX 1030
OSHTEMO, MI 49077-1030

| | |
|---|---|
| PRINCIPAL DUE | 1,467,948.00 |
| INTEREST/FEE DUE | 42,437.97 |
| LATE CHARGES DUE | 1,562.23 |
| TOTAL AMOUNT DUE | 1,511,948.20 |
| PAYMENT DUE DATE | 10-17-08 |

AMOUNT ENCLOSED $

JEFFREY YESSENOW
808 KILLARNEY DR
DYER  IN    46311

**EXHIBIT**

| TRAN CODE | CUSTOMER/OBLIGOR NO. | INVOICE/OBLIGATION NO. | TRD | AMOUNT |
|---|---|---|---|---|
| 4320 | 9864224799 | 0096176763 | | 00000151194820 |

⑈0096176763⑈ ⑆5000⑈5611⑇ 569864224799⑈ 4320

# National City

**National City Corporation**
1900 East Ninth Street
Cleveland, OH 44114-3484
216-222-2965
Fax: 216-222-7188
Email: rajko.radonjich@nationalcity.com

**Rajko Radonjich**
Vice President and Attorney
Law Division

October 20, 2008

Paul A. Rossi, Esq.
Law Office of Paul A. Rossi, LLC
725 E. Commercial Avenue
Lowell, Indiana 46356

**Re:    Jeffrey Yessenow**

Dear Mr. Rossi:

I am in receipt of your letter dated October 17, 2008, together with the related enclosures. Thank you for sending the requested documents.

With regard to the proposed forbearance terms outlined in your letter, please be advised that at no time has National City Bank suggested that the forbearance period would be from one to three years. I believe that is something that your client asked about in a conversation with my client. National City Bank might consider a forbearance term of 90 days and perhaps a term that goes up to one year, but your client would be required to continue paying the interest on a monthly or quarterly basis during any such forbearance period. Under no circumstances will the bank agree to waive the payment of interest until the expiration of the forbearance term.

Please call me with any questions regarding this matter.

Very truly yours,

Rajko Radonjich

cc:    E. Roebuck

radon\corres 2008\yessenow ltr 3 to rossi.doc

**EXHIBIT**
E