**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| JEFFREY S. YESSENOW, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 2:08-CV-353 PPS |
| ) | |
| HILTON M. HUDSON II, M.D., et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Plaintiff Jeffrey Yessenow seeks a preliminary injunction freezing the assets of Defendants Hilton Hudson, Leroy Wright, and their affiliated business entities in this case brought to enforce rights under an indemnification agreement. (D 30.) Although there is evidence that Yessenow will prevail on the merits, there is virtually no evidence that he will be irreparably harmed if I do not issue a preliminary injunction. And more importantly, the Supreme Court has explicitly prohibited courts from freezing a defendant's assets to protect the recovery of damages. So for reasons explained more fully below, Yessenow's motion is denied.

### I. BACKGROUND

This case is stark reminder of what can go wrong when doctors go into business together. Plaintiff Jeffrey Yessenow and Defendant Hilton Hudson both practiced medicine at, and were investors in, what is now known as Heartland Memorial Hospital. Leroy Wright, a banker, was also a major investor in the Hospital. In February 2006, a venture capital company offered to purchase five of the Hospital's ancillary medical facilities through a sale/leaseback transaction. But the venture capital company first required an initial security deposit of one-year's rent, roughly $1.5 million, in case the Hospital defaulted on any payments. According to Yessenow,

Hudson and Wright asked him to post the initial security deposit. So on March 17, 2006, Yessenow obtained a six month letter of credit, backed by a $1.5 million promissory note, and secured by a mortgage on his lakefront condo in downtown Chicago.

On March 23, 2006, the sale/leaseback transaction was consummated. Worried about his exposure under the letter of credit, Yessenow insisted on indemnification from his business partners. So on March 31, 2006, the parties entered into an Indemnification Agreement, whereby the Hospital would indemnify Yessenow from any losses or expenses incurred as a result of the bank loan. The indemnification clause reads:

> [The Hospital] shall pay or cause to be paid to [Yessenow], when due, any and all expenses incurred in the execution of the [letter of credit] or in any manner connected therewith. [The Hospital] shall at all times indemnify and save [Yessenow] harmless from and against all liability, loss, damages, costs, and expenses, including counsel fees, which [Yessenow] may for any cause at any time sustain or incur by reason of or in any way related to the [letter or credit], any continuation or renewal thereof, any modification, amendment, limitation, or extension thereof, or any new guaranty, obligation, or undertaking executed in place thereof.

(DE 1 at 15.) The Hospital's indemnification obligations to Yessenow were guaranteed jointly and severally by Hudson and Wright individually, and their business entities Hudson Publishing, Wright Capital Partners and Wright Group Holdings. (*Id.* at 16.) It is clear from the plain language of the Agreement and the parties' sworn statements that the purpose of the Agreement was to protect Yessenow from footing the bill if the letter of credit was drawn upon. (*Id.* at 15; DE 14-4 ¶ 6.) What's not clear is why Yessenow sought this protection *after* he obtained the letter of credit.

Then on October 31, 2006, the Sisters of St. Francis Health Services purchased the Hospital's main campus. Munster Medical Holdings ("MMH"), the entity which owned the main campus, sold the property to the Hospital. In turn, the Hospital entered into a

sale/leaseback transaction with the Sisters. As part of this second transaction, Yessenow received roughly $2.2 million dollars. Yessenow contends this amount was a return of a previous $1 million investment in MMH, plus a distribution of his 12.5% ownership in MMH. Defendants meanwhile insist the $2.2 million equaled Yessenow's original 12.5% ownership in MMH, plus an additional 17.5% share of MMH accepted by Yessenow as an accord and satisfaction of Defendants' obligations under the Indemnification Agreement. Yessenow counters that the extra 17.5% was not part of the $2.2 million, was offered to him as additional consideration for extending the letter of credit beyond the initial six months, and in any event was never paid to him.

     Fast forward a year and a half later. On March 6, 2008, the bank that purchased Yessenow's promissory note made a demand for a draw on the full amount of the letter of credit. Yessenow looked to Defendants for indemnification, Defendants balked, and this lawsuit followed. On February 27, 2009, I held an evidentiary hearing on Yessenow's motion for a preliminary injunction to freeze Defendants' assets. Hudson, Wright and Alton Sharp, another investor, testified as to their knowledge of the transactions and dealings with Yessenow. Edward Roebuck of National City Bank – the bank that issued the letter of credit – testified that the full amount of the letter of credit had been drawn upon. Roebuck further testified that the bank was likely to initiate foreclosure proceedings on Yessenow's condo within the coming weeks if it did not receive full payment of the loan, plus interest and fees. Yessenow also told his side of the story. Most notably, Yessenow testified that – although he had a net worth of several million dollars – much of his assets were illiquid and he had no means of paying off the bank and was unable to obtain an additional line of credit to prevent foreclosure.

## II. DISCUSSION

A party seeking a preliminary injunction must demonstrate 1) a likelihood of success on the merits;  2) a lack of an adequate remedy at law; and 3) that an irreparable harm will result if the injunction is not granted.  *See Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007).  But "[a] preliminary injunction is an extraordinary remedy never awarded as a matter of right."  *Winter v. Natural Res. Def. Council*, 129 S.Ct. 365, 376-77 (2008).  Thus, even if the first three elements are established, I must weigh the public consequences of granting the injunction and balance the relative harms that could be caused to either party.  *Id.*  The evaluation of a whether an injunction is appropriate is made on a sliding scale; so for example, a lesser likelihood of success could be overcome with proof that the balance of harm tips strongly in the plaintiff's favor.  *See AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002).

In the first phase of the analysis, the likelihood of success analysis only requires me to evaluate "whether the plaintiff has *any* likelihood of success – in other words, a greater than negligible chance of winning."  *Id.* (emphasis added).  In this case, plaintiff seeks a declaration of his rights under the Indemnification Agreement and damages for breach of that agreement.  The plain language of that Agreement is clear.  The Hospital is required to indemnify Yessenow in the event that he incurs costs and fees in connection with the letter of credit.  (DE 1 at 15.)  And the Hospital's obligations are clearly guaranteed by Defendants.  (*Id.* at 16.)  As to breach, Defendants refuse to reimburse Yessenow for the bank's demand on the letter of credit.  These facts are not in dispute.

But Defendants claim that they owe Yessenow nothing for two reasons.  First, they argue the Indemnification Agreement is unenforceable because it was entered into after Yessenow fulfilled his obligation (obtaining the letter of credit), and therefore the Agreement lacked

4

adequate consideration. Second, Defendants contend the $2.2 million issued to Yessenow as part of the main campus transaction was an accord and satisfaction of their obligations under the Agreement. Neither of these defenses are ironclad and there are issues of fact which still need to be sorted out in discovery. At this early stage in the litigation, I am persuaded that Yessenow has more than a negligible chance of prevailing on the merits.

But Yessenow falls short in the inadequate remedy at law and irreparable harm elements of the preliminary injunction analysis. A remedy is inadequate if it is "seriously deficient as compared to the harm suffered." *FoodComm Int'l v. Barry*, 328 F.3d 300, 304 ( 7th cir. 2003). And a preliminary injunction is only properly sought if it will avert irreparable harm to the moving party. *See Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 944 (7th Cir. 2006). Here, the irreparable harms asserted by Yessenow are foreclosure on his lakefront condo and the associated harm to his credit rating and business reputation if he defaults on the promissory note. Yessenow argues that mere damages will not remedy a loss of his unique property. But how will freezing the Defendants' assets prevent the looming foreclosure proceedings? When asked this at the hearing, Yessenow's counsel had no answer. Whether I order the Defendants' assets frozen or not, the calamity that Yessenow is trying to avoid – the foreclosure on the condo – is going to happen one way or the other. In other words, issuing the injunction will not avert the harm. Indeed, the bank representative testified that foreclosure proceedings were likely to begin soon. But he gave no indication that the bank would halt or delay those proceedings if I issued an asset freeze order. Because the asserted harms cannot be averted by the relief sought, a preliminary injunction is not merited.

Even if Yessenow had met his burden to justify a preliminary asset freeze, the Supreme Court's decision in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), prohibits the Court from granting such relief. In *Grupo*, the Supreme Court held that a district court "ha[s] no authority to issue a preliminary injunction preventing [defendants] from disposing of their assets pending adjudication of [a plaintiff's] contract claim for money damages." *Id.* at 333. The reason for this rule, is that "until [a] creditor has established title, he has no right to interfere [with the debtor's property], and it would lead to an unnecessary, and perhaps, a fruitless and oppressive interruption of the debtor's rights." *Id.* at 320 (citations omitted). The *Grupo* decision is on all fours with the facts of this case. Yessenow has sued defendants for damages and fears Defendants will secrete their assets or reinvest their funds into other ventures to evade paying such damages. (DE 18 at 7-8.) But fear that a debtor will avoid paying their debts is nothing new or exceptional. *Grupo*, 527 U.S. at 322 ("The law of fraudulent conveyances and bankruptcy was developed to prevent such conduct; an equitable power to restrict a debtor's use of his unencumbered property before judgment was not."). Therefore, *Grupo* is a death knell to Yessenow's request.

As a last ditch effort to circumvent *Grupo*, Yessenow pled for the first time in his reply brief a claim for constructive fraud. (DE 29 at 5-8.) He then notes that *Grupo* permits a restraint on assets in a suit for equitable relief, and argues that an asset freeze is necessary to prevent further fraud or unjust enrichment. *See id.*; *see also CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002). Yessenow's argument is a nonstarter. The federal pleading rules require that an allegation of fraud "must state with particularity the circumstances constituting fraud."

FED. R. CIV. P. 9(b). There is simply no allegation of fraud, or the circumstances of fraud, in the complaint, so I cannot entertain this argument without ignoring the mandates of Rule 9(b).

### III. CONCLUSION

Plaintiff can neither satisfy the elements of a preliminary injunction request, nor get around the Supreme Court's ruling in *Grupo*. Therefore, Plaintiff's Motion for Preliminary Injunction [DE 30] is **DENIED**. And for the reasons stated above, Defendants' Motion to Strike Plaintiff's Unpled Constructive Fraud Argument First Raised in Reply [DE 33] is **DENIED AS MOOT**.

**SO ORDERED**.

**ENTERED**: March 16, 2009.

 s/ Philip P. Simon  
PHILIP P. SIMON, JUDGE  
UNITED STATES DISTRICT COURT