UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| JEFFREY R. YESSENOW, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| HILTON M. HUDSON II, M.D., individually; | ) | |
| and d/b/a HILTON PUBLISHING, INC., an | ) | CAUSE NO. 2:08-CV-353 PPS |
| Illinois Corporation; and LEROY J. WRIGHT, | ) | |
| individually, and n/k/a WRIGHT CAPITAL | ) | |
| GLOBAL EQUITIES, LLC, an Illinois Limited | ) | Removed from Lake County |
| Liability Corporation; a/k/a LJW GLOBAL | ) | Superior Court |
| EQUITIES; d/b/a WRIGHT CAPITAL | ) | Cause No. 45D10-0811-PL-00162 |
| PARTNERS, LLC., an Illinois Limited Liability | ) | |
| Corporation; f/k/a WRIGHT GROUP | ) | JURY TRIAL DEMANDED |
| INTERNATIONAL HOLDINGS, LLC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| HILTON M . HUDSON II, M.D., LEROY J. | ) | |
| WRIGHT, WRIGHT CAPITAL PARTNERS, | ) | |
| LLC, and WRIGHT GROUP | ) | |
| INTERNATIONAL HOLDINGS, LLC., | ) | |
| | ) | |
| Counterclaimants, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JEFFREY R. YESSENOW, M.D. | ) | |
| | ) | |
| Counterdefendant. | ) | |

## DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND RESTATED AMENDED COUNTERCLAIM

Defendants Hilton M. Hudson II, M.D., Hilton Publishing, Inc., Leroy J. Wright, Wright

Capital Partners, LLC, and Wright Group International Holdings, LLC ("Defendants") answer

Plaintiff's First Amended Complaint as follows. Pursuant to Fed.R.Civ.P. 38, Defendants hereby

demand a trial by jury on all issues so triable. For ease of reference, the allegations in Plaintiff's

Complaint are set forth verbatim with Defendants' responses immediately following each allegation.

**FIRST DEFENSE**

1.      At all relevant times the Plaintiff, Jeffrey R. Yessenow, M.D., (hereafter "Dr. Yessenow") was a resident of Indiana.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the First Amended Complaint.

2.      At all relevant times the Defendant, Hilton M. Hudson II, M.D., (hereafter "Dr. Hudson") was a resident of Illinois. Defendant Hilton Publishing, Inc is a closely-held Illinois corporation.

**ANSWER:**    Defendants admit the allegations of Paragraph 2 of the First Amended Complaint.

3.      At all relevant times Defendant, Leroy J. Wright, (hereafter "Wright"), was a resident of Illinois. Defendants Wright Capital Partners, LLC and Wright Group International Holdings, LLC are Illinois limited liability companies.

**ANSWER:**    Defendants admit the allegations of Paragraph 3 of the First Amended Complaint.  Defendants aver that Wright Capital Partners, LLC and Wright Group International Holdings, LLC are now defunct as a direct result of Dr. Yessenow's actions, as explained in Defendants' Amended Counterclaims.

4.      The cause of action was originally filed in Indiana State Court but was removed pursuant to 28 U.S.C. § 1441.

**ANSWER:** Defendants admit the allegations of Paragraph 4 of the First Amended Complaint.

5. In March of 2006, a series of transactions was completed whereby TWG Illiana Surgery and Medical Center, Inc. merged with iHealthcare, Inc to create Heartland Memorial Holdings, Inc., whose main asset was Heartland Memorial Hospital, LLC ("the Hospital"), now in bankruptcy.

**ANSWER:** Defendants admit the allegations of Paragraph 5 of the First Amended Complaint.

6. Dr. Hudson was the Chairman of TWG Illiana Surgery and Medical Center, Inc. and Wright was the Chairman of iHealthcare, Inc.

**ANSWER:** Defendants admit the allegations of Paragraph 6 of the First Amended Complaint.

7. After the merger, Dr. Yessenow was the CEO of the Hospital, Dr. Hudson was chairman of the Hospital and a substantial minority shareholder of Heartland Memorial Holdings, Inc., and Wright was the majority shareholder of Heartland Memorial Holdings, Inc.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the First Amended Complaint. Defendants aver that, after the merger described in Paragraph 5 of the First Amended Complaint, Dr. Yessenow was the CEO of the Hospital, Dr. Hudson was chairman of the Hospital and a minority shareholder of Heartland Memorial Holdings, Inc., and Wright was the majority shareholder of Heartland Memorial Holdings, Inc.

8. On information and belief, Dr. Hudson received at least six hundred thousand dollars ($600,000.00) and Wright received at least three hundred thousand dollars ($300,000.00) from proceeds of the merger.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to Plaintiff's information and belief. Defendants deny the remaining allegations contained in Paragraph 8 of the Amended Complaint.

9. This merger was financed in large part by AIC Ventures and resulted in a sale/leaseback transaction between AIC Ventures and Heartland Memorial Hospital, regarding TWG Illiana Surgery and Medical Center's real estate holdings. The real estate holdings for this transaction comprised five (5) remote medical centers, namely, medical facilities located at: 1) 9050 West 81 Street, Justice, Illinois; 2) 8900 Broadway, Merrillville, Indiana; 3) 201 West 89th Street, Merrillville, Indiana; 4) 2001 South Route 41, Schererville, Indiana; and, 5) 9136 Columbia Avenue, Munster, Indiana.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of the First Amended Complaint. Defendants aver that the merger described in Paragraph 5 of the First Amended Complaint included a sale/leaseback transaction between AIC Ventures and Heartland Memorial Hospital, regarding TWG Illiana Surgery and Medical Center's real estate holdings, which comprised five (5) remote medical centers, namely, medical facilities located at: 1) 9050 West 81 Street, Justice, Illinois; 2) 8900 Broadway, Merrillville, Indiana; 3) 201 West 89th Street, Merrillville, Indiana; 4) 2001 South Route 41, Schererville, Indiana; and, 5) 9136 Columbia Avenue, Munster, Indiana.

10.    As part of this transaction, AIC Ventures, as the new owner/lessor of the property, required a security deposit of twelve months rent on the real estate, which was equal to approximately one million five hundred thousand dollars ($ 1,500,000.00).

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the First Amended Complaint. Defendants aver that, as part of the transaction described in Paragraph 9 of the First Amended Complaint, AIC Ventures requested a security deposit of twelve months' rent on the real estate.

11.    Apparently, the hospital was unable to provide the security deposit and Wright and Dr. Hudson were either unable to or unwilling to do so. Dr. Yessenow was approached by Defendants Hudson and Wright to post this security deposit as Dr. Yessenow was the only person involved in the transaction who had sufficient capital to secure the security deposit.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 11 of the Amended Complaint that relate to whether the hospital was unable to provide the security deposit. Defendants deny the remaining allegations contained in Paragraph 11 of the First Amended Complaint.

12.    This security deposit was to be provided in the form of a Letter of Credit from National City Bank, which was issued to TWG Illiana Surgery and Medical Center with NL Ventures as the beneficiary. NL Ventures is a wholly owned subsidiary of AIC Ventures.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 12 of the Amended

Complaint. Defendants admit the allegations contained in the second sentence of Paragraph 12 of the Amended Complaint.

13.     On or about March 13, 2006, Defendants Hudson and Wright represented to Dr. Yessenow that the Letter of Credit would be revocable and for a term of six months, at the end of which time Dr. Yessenow's obligation would cease.

**ANSWER:**     Defendants deny the allegations of Paragraph 13 of the First Amended Complaint.

14.     The Letter of Credit was to be secured by a Line of Credit issued to Dr. Yessenow for one million five hundred thousand dollars ($ 1,500,000.00). The Letter of Credit was issued on March 17, 2006.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 14 of the Amended Complaint. Defendants admit the allegations contained in the second sentence of Paragraph 14 of the Amended Complaint.

15.     Dr. Yessenow agreed to sign his personal Line of Credit based on the representations of Wright and Hudson. The Promissory Note for the Line of Credit was signed April 5, 2006.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 15 of the Amended Complaint. Defendants admit the allegations contained in the second sentence of Paragraph 15 of the Amended Complaint.

16.     The Line of Credit issued to Dr. Yessenow was in turn to be secured by a mortgage on real estate owned by Dr. Yessenow. On information and belief, Dr. Yessenow signed the mortgage on his Chicago condo on April 5, 2006. The mortgage was recorded April 6, 2006.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 16 of the Amended Complaint. Defendants lack knowledge or information sufficient to form a belief as to Plaintiff's information and belief and deny the remaining allegations contained in the second sentence of Paragraph 16 of the Amended Complaint.  Defendants admit the allegations contained in the third sentence of Paragraph 16 of the Amended Complaint.


17.     Dr. Yessenow pledged his real estate in this fashion for the benefit of the hospital.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Amended Complaint.


18.     Agreeing to take out the Line of Credit, Dr. Yessenow insisted on an indemnification agreement indemnifying him in the event that the hospital was unable to make its lease payments, which would result in a draw down of the Letter of Credit.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 18 of the Amended Complaint.


19.     Dr. Yessenow also insisted that the indemnification agreement be guaranteed by Defendants.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Amended Complaint. Defendants aver that Dr. Yessenow presented to them the document entitled "Indemnification Agreement" and asked them to execute it after the sale/leaseback transaction between AIC Ventures and Heartland Memorial Hospital had been completed.

20. On or about March 30, 2006, Dr. Yessenow entered into an Indemnification Agreement, attached as Ex. 5 to Ex. P to Pl. Reply in Support of Motion for TRO, with TWG Illiana Surgery and Medical Center and iHealthcare for any liability incurred on his Line of Credit. The Indemnity Agreement was guaranteed by Defendant Dr. Hudson, individually and on behalf of Hilton Publishing, and Defendant Wright, individually and on behalf of Wright Capital Partners, LLC and Wright Group International Holdings, LLC.

**ANSWER:** Defendants admit that, on March 30, 2006, the following parties executed a document entitled "Indemnification Agreement": Defendant Hudson, individually and as Chairman and Chief Executive Officer of Hilton Publishing, Inc.; Defendant Wright, individually, as Chairman of iHealthcare, Inc., as Manager of Wright Capital Partners, LLC, as Manager of Wright Group International Holdings, LLC, and as Chairman of TWG Illiana Surgery and Medical Center, Inc.; and Dr. Yessenow. Defendants admit that the document entitled "Indemnification Agreement" was attached as Ex. 5 to Ex. P to Pl. Reply in Support of Motion for TRO. Defendants deny the remaining allegations of Paragraph 20 of the Complaint.

21. Defendants signed the guarantee of the Indemnification Agreement "for the benefit of the hospital."

**ANSWER:** Defendants admit that Defendant Hudson, individually and as Chairman and Chief Executive Officer of Hilton Publishing, Inc.; Defendant Wright, individually, as Chairman of iHealthcare, Inc., as Manager of Wright Capital Partners, LLC, as Manager of Wright Group International Holdings, LLC, and as Chairman of TWG Illiana Surgery and Medical Center, Inc., executed the document entitled "Indemnification Agreement" for the benefit of the hospital. Defendants deny the remaining allegations of Paragraph 21 of the Amended Complaint.

22. Without the Indemnity Agreement guaranteed by Defendants, Dr. Yessenow would not have signed the Promissory Note or the Reimbursement and Security Agreement and therefore, there would have been no Letter of Credit. Without the Letter of Credit, AIC Ventures would not have entered into the sale/leaseback transaction at issue and there would have been no merger.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Amended Complaint.

23. The Indemnification Agreement specifically referenced the security deposit financed by Dr. Yessenow's Letter of Credit and indicated that it was "an integral part of" the sale/leaseback transaction; would only be issued by the bank if Dr. Yessenow signed a promissory note and a mortgage on his real estate; and that the Letter of Credit was not intended to be renewed or extended beyond the original six months.

**ANSWER:** Defendants deny the allegations contained in Paragraph 23 of the Amended Complaint.

24. In September of 2006, Defendants Dr. Hudson and Wright, along with Heartland Memorial Hospital, LLC, requested that Dr. Yessenow extend his Line of Credit so the Letter of Credit could be extended for one year.

**ANSWER:** Defendants deny the allegations of Paragraph 24 of the Amended Complaint.

25. Dr. Yessenow originally resisted the extension but was informed that NL Ventures would draw on the Letter of Credit if it was not extended, thereby also drawing on Dr. Yessenow's personal Line of Credit.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 of the Amended Complaint.

26. Thus, Dr. Yessenow was put into a position whereby he was left with little choice but to extend the Letter of Credit beyond the original six months for an additional period of one year.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the Amended Complaint.

27. In consideration for this extension, Dr. Yessenow insisted on additional security for his exposure. This additional security was discussed while Heartland Memorial Holdings, Inc. was in discussions with the Sisters of St. Francis Health Services, ("the Sisters"), concerning a transaction whereby the Sisters would purchase the Hospital before the end of October 2006.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 of the Amended Complaint.

28.     On September 26, 2006, Dr. Yessenow signed a Security Agreement, previously attached as Ex. 4 to Ex. P to Pl. Reply Brief in Support of TRO, in which he was given a security interest of 17.5% of Heartland Memorial Hospital, LLC's interest in Munster Medical Holdings, LLC ("MMH"). The Security Agreement stated that the interest would only be transferred if Heartland Memorial Hospital, LLC did not replace Dr. Yessenow's security underlying the Letter of Credit by October 31, 2006. The implication was that Dr. Yessenow would have his security released through proceeds from the sale to the Sisters.

**ANSWER:**     Defendants admit the allegations contained in the first sentence of Paragraph 28 of the Amended Complaint.  Defendants deny the remaining allegations contained in Paragraph 28 of the Amended Complaint.


29.     MMH's main asset was the real estate on which the hospital's main campus was located.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 of the Amended Complaint.


30.     Although the Security Agreement said it was being given for Dr. Yessenow "initially providing and subsequently extending" the Line of Credit secured by the Letter of Credit, obviously a security agreement entered into in September of 2006 cannot be consideration for a Letter of Credit entered into in March of 2006.

**ANSWER:**     Paragraph 30 of the Amended Complaint calls for a legal conclusion, and thus no answer is required.  To the extent an answer is required, Defendants deny the allegations contained in Paragraph 30 of the Amended Complaint.

31.     The Security Agreement was given as additional security for the loan which Dr. Yessenow had agreed to extend.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 31 of the Amended Complaint.

32.     The Security Agreement itself is clear that it does not replace any prior guarantees. Ex. 4 to Ex. P to Pl. Reply Brief in Support of TRO, at ¶ 6.

**ANSWER:**     Paragraph 32 of the Amended Complaint calls for a legal conclusion, and thus no answer is required.  To the extent an answer is required, Defendants deny the allegations contained in Paragraph 32 of the Amended Complaint.

33.     At this time, Dr. Yessenow already owned 12.5% of MMH from an initial investment in MMH in 2004.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Amended Complaint.

34.     On October 31, 2006, a transaction was finalized, in which the real estate associated with the main campus of the hospital was sold in a sale/leaseback transaction. MMH, which owned the real estate comprising the main campus of the hospital, sold its interest in the real estate to Heartland Memorial Holdings in order to facilitate the hospital's subsequent sale/leaseback transaction with the Sisters.

**ANSWER:**     Defendants admit the allegations contained in the first sentence of Paragraph 34 of the Amended Complaint.  As to the second sentence of Paragraph 34 of the Amended Complaint, Defendants admit that MMH, which owned the real estate comprising the

main campus of the hospital, sold its interest in the real estate to Heartland Memorial Holdings. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 34 of the Amended Complaint.

35.     At the closing of the sale by MMH, Dr. Yessenow was paid a $ 2.2 million distribution in connection with his 12.5% interest in MMH, including the return of his $1 million investment and his 12.5% share of the proceeds of the sale transaction plus other contractual amounts.

**ANSWER:**     Defendants admit that, at the closing of the sale by MMH, Dr. Yessenow was paid $2.2 million. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 35 of the Amended Complaint.

36.     The payment had nothing to do with the Letter of Credit, which remained outstanding until it expired in September of 2008. Since the property was sold by November 1, 2006, the Letter of Credit should have been replaced, releasing Dr. Yessenow from any exposure on his personal Line of Credit, but it was not. The now worthless 17.5% of MMH of course was not transferred.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first and second sentences of Paragraph 35 of the Amended Complaint. As to the third sentence of Paragraph 35 of the Amended Complaint, Defendants deny that the 17.5% of MMH was not transferred and lack knowledge or information sufficient to form a belief as to the worth of the 17.5% interest in MMH. Defendants aver that Dr. Yessenow both requested and accepted the Hospital's transfer of its 17.5% interest in MMH.

37. On or about March 5, 2008, LaSalle Bank National Association drew on the Letter of Credit issued to TWG Illiana Surgery and Medical Center, as an assignee, which in turn caused National City Bank to draw on Dr. Yessenow's supporting personal Line of Credit.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37 of the Amended Complaint.

38. Since that time National City Bank has been pursuing Dr. Yessenow for payment on his Line of Credit.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 of the Amended Complaint.

39. On February 18, 2009, National City Bank stated that it will take the necessary actions to protect its interests if the Line of Credit was not paid in full by March 3, 2009.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 39 of the Amended Complaint.

40. The Line of Credit was not paid in fully by March 3, 2009, and the threat of a lawsuit by National City Bank against Dr. Yessesnow remains.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40 of the Amended Complaint.

41. Defendants have refused to indemnify Dr. Yessenow according to the plain terms of the Indemnification Agreement.

**ANSWER:** Defendants admit that they have refused to indemnify Dr. Yessenow but deny that they have any obligation to do so. Defendants deny the remaining allegations of Paragraph 41 of the Amended Complaint.

## COUNT I - DECLARATORY JUDGMENT
### 28 U.S.C. § 2201

42. Plaintiff hereby incorporates Paragraphs 1 to 41 as Paragraph 42.

**ANSWER:** Defendants' responses to Paragraphs 1 through 41 are incorporated herein by reference.

43. Dr. Yessenow asserts that he has fulfilled all obligations under the terms of the Indemnification Agreement by applying for and obtaining a substantial Line of Credit from National City Bank of Indiana, requiring that he mortgage and encumber his real estate which was provided as collateral for the Line of Credit and which was utilized by Defendants Dr. Hudson and Wright in the furtherance of their business and the Defendant's realized the benefits and advantages of the use of Dr. Yessenow's Line of Credit.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 43 of the Amended Complaint that relate to Plaintiff's state of mind. Defendants deny the remaining allegations contained in Paragraph 43 of the Amended Complaint.

44. Dr. Yessenow asserts that it was the clear intent of the parties that Defendants, Hudson and Wright would protect, indemnify and hold harmless Dr. Yessenow, from any loss, costs, expenses, damage or injury to which Dr. Yessenow or his property was exposed by virtue

of the obligation owed to National City Bank and guarantee repayment of any and all costs and expenses incurred by Dr. Yessenow with respect to the Line of Credit and to absolutely indemnify Dr. Yessenow with regard to the obligation.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 44 of the Amended Complaint that relate to Plaintiff's state of mind. Defendants deny the remaining allegations contained in Paragraph 44 of the Amended Complaint.


45. Dr. Yessenow has made proper notice to Defendants that Heartland Memorial Hospital, has failed to perform the obligations under the Indemnity Agreement. See Complaint Ex. G. Said notice sufficiently advised the Defendants that Dr. Yessenow has incurred significant liabilities and expenses with continuing liability with respect to the obligation. See Letter of February 18, 2009 from National City Bank, attached hereto as Ex. 1.

**ANSWER:** Paragraph 45 of the Amended Complaint calls for a legal conclusion, and thus no answer is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 45 of the Amended Complaint.


46. The Defendants have been properly placed on notice that they are legally responsible for any and all liabilities and expenses incurred pursuant to the Indemnification Agreement until such time as all obligations are performed and the collateral is released and fully and finally discharged.

**ANSWER:** Paragraph 46 of the Amended Complaint calls for a legal conclusion, and thus no answer is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 46 of the Amended Complaint.

47.     Defendants Dr. Hudson and Wright undertook the obligation to indemnify Dr. Yessenow with regard to the commercial Letter of Credit and therefore were contractually obligated, upon proper notice, to indemnify Dr. Yessenow for any and all losses with regard to the Line of Credit to ensure that his collateral remained unencumbered.

**ANSWER:**     Defendants deny the allegations of Paragraph 47 of the Amended Complaint.


48.     Defendants Hudson and Wright have breached the terms of the Indemnification Agreement by failing and refusing to indemnify Dr. Yessenow for the contractual obligation of the Line of Credit created by the draw from the Letter of Credit which was paid by National City Bank in the amount of One Million Four Hundred Sixty-Seven Thousand Nine Hundred and Forty-Eight Dollars ($1,467,948.00), along with draw and transfer fees and other related fees and costs associated with the Letter of Credit.

**ANSWER:**     Defendants deny the allegations of Paragraph 48 of the Amended Complaint.


49.     A declaration clarifying the contractual obligations owed by Defendants Hudson and Wright to Plaintiff, Dr. Yessenow, pursuant to the terms of the Indemnification Agreement dated on or about March 30, 2006, would serve a useful purpose by declaring and determining the rights of the parties and affording relief from uncertainty, insecurity and controversy giving rise to this proceeding.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 49 of the Amended Complaint.

**WHEREFORE**, Defendants Hilton M. Hudson II, M.D., Hilton Publishing, Inc., Leroy J. Wright, Wright Capital Partners, LLC, and Wright Group International Holdings, LLC respectfully request that the court enter judgment in their favor and against Plaintiff on Count I of the Complaint and grant all other just and proper relief in the premises.

## COUNT II - CONSTRUCTIVE FRAUD

50.     Plaintiff hereby incorporates Paragraphs 1 to 49 as Paragraph 50.

**ANSWER:**     Defendants' responses to Paragraphs 1 through 49 are incorporated herein by reference.

51.     Dr. Yessenow and Defendants Wright and Dr. Hudson were joint venturers in the AIC Ventures sale/leaseback transaction. Dr. Yessenow, Dr. Hudson, and Wright all were involved in and benefited from the transaction. Dr. Hudson and Wright were the Chairmen of the organizations that merged in the transaction, TWG Illiana Surgery and Medical Center, Inc. and iHealthcare, Inc., respectively. Dr. Yessenow pledged personal collateral required for the completion of the transaction and became CEO of the Hospital. Dr. Hudson became Chairman of the Hospital and a significant minority shareholder on Heartland Memorial Holdings, Inc. and Wright was the majority shareholder of Heartland Memorial Holdings, Inc.

**ANSWER:**     The first sentence of Paragraph 51 of the Amended Complaint calls for a legal conclusion, and thus no answer is required.   To the extent an answer is required, Defendants deny the allegations contained in the first sentence of Paragraph 51 of the Amended Complaint.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of Paragraph 51 of the Amended Complaint. As to the third sentence of Paragraph 51 of the Amended Complaint, Defendants admit that Dr.

Hudson and Wright were the Chairmen of TWG Illiana Surgery and Medical Center, Inc. and iHealthcare, respectively and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations. As to the fourth sentence of Paragraph 51 of the Amended Complaint, Defendants admit that Dr. Yessenow became CEO of the Hospital and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations. As to the fifth sentence of Paragraph 51 of the Amended Complaint, Defendants admit that Dr. Hudson became Chairman of the Hospital and a minority shareholder in Heartland Memorial Holdings, Inc. and that Wright was the majority shareholder of Heartland Memorial Holdings, Inc. Defendants deny any remaining allegations contained in Paragraph 51 of the Amended Complaint.

52.     As joint venturers, Dr. Yessenow, Dr. Hudson, and Wright owed each other fiduciary duties.

**ANSWER:**     Paragraph 52 of the Amended Complaint calls for a legal conclusion, and thus no answer is required. To the extent an answer is required, Defendants deny the allegations contained in Paragraph 52 of the Amended Complaint.

53.     On or about March 13, 2009, Defendants Wright and Dr. Hudson represented to Dr. Yessenow that the Letter of Credit, which Dr. Yessenow secured with a personal Line of Credit, was to be revocable and for a term of only six months.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 53 of the Amended Complaint.

54.    Dr. Yessenow signed the Line of Credit in reliance on the representations of Defendants Dr. Hudson and Wright.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 54 of the Amended Complaint.

55.    Despite their representations to Dr. Yessenow and in breach of their fiduciary duty, Defendants Dr. Hudson and Wright obtained an irrevocable Letter of Credit to be secured by Dr. Yessenow's personal Line of Credit.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 55 of the Amended Complaint.

56.    Despite their representations to Dr. Yessenow and in breach of their fiduciary duty, Defendants Dr. Hudson and Wright have extended the Letter of Credit twice, each time for a period of one year.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 56 of the Amended Complaint.

57.    Because the Letter of Credit was irrevocable, had Dr. Yessenow not agreed to extend his Line of Credit, the Letter of Credit would have been immediately drawn upon and the Line of Credit accessed to pay the draw.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 57 of the Amended Complaint.

58.    Dr. Yessenow has been damaged by the threatened foreclosure of his real property and the damage to his credit rating as a result of the draw on his Line of Credit well after the initial six month term. He has incurred, and continues to incur, attorneys fees and costs associated with negotiating with National City Bank and bringing this action. Dr. Yessenow's damages were proximately caused by Defendants Dr. Hudson and Wright. If not for Dr. Husdon's and Wright's misrepresentations, Dr. Yessenow would not have taken out the Line of Credit secured by a mortgage on his Chicago condominium.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first and second sentences of Paragraph 58 of the Amended Complaint.    Defendants deny the allegations contained in the third sentence of Paragraph 58 of the Amended Complaint.    Defendants deny that they made any misrepresentations, and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the fourth sentence of Paragraph 58 of the Amended Complaint.

59.    The AIC Ventures sale/leaseback transaction would not have occurred if not for the Letter of Credit issued to Illiana Surgery and Medical Center and secured by Dr. Yessenow's Line of Credit.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 59 of the Amended Complaint.

60.    Defendants Dr. Hudson and Wright benefited from the Letter of Credit by being paid, on information and belief, at least nine hundred thousand dollars ($ 900,000.00) from proceeds of the AIC Ventures sale/leaseback transaction.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to Plaintiff's information and belief. Defendants deny the remaining allegations contained in Paragraph 60 of the Amended Complaint.

**WHEREFORE**, Defendants Hilton M. Hudson II, M.D., Hilton Publishing, Inc., Leroy J. Wright, Wright Capital Partners, LLC, and Wright Group International Holdings, LLC respectfully request that the court enter judgment in their favor and against Plaintiff on Count II of the Complaint and grant all other just and proper relief in the premises.

## COUNT III - INJUNCTIVE RELIEF

### Fed. R. Civ. P. 65

61.     Plaintiff hereby incorporates Paragraphs 1 through 60 as Paragraph 61.

**ANSWER:** Defendants' responses to Paragraphs 1 through 60 are incorporated herein by reference.

62.     As a result of the Constructive Fraud perpetrated by Defendants Dr. Hudson and Wright, they have been unjustly enriched by an amount of approximately nine hundred thousand dollars.

**ANSWER:** Defendants deny the allegations contained in Paragraph 62 of the Amended Complaint.

63.     The unjust enrichment of Defendants is subject to the equitable relief of a constructive trust.

**ANSWER:** Defendants deny the allegations contained in Paragraph 63 of the Amended Complaint.

64. Dr. Yessenow has been irreparably harmed by the constructive fraud both by having his real estate subject to foreclosure and the impossibility of being able to determine the precise amount of damages suffered from the constructive fraud Defendants Dr. Hudson and Wright.

**ANSWER:** Defendants deny the allegations contained in Paragraph 64 of the Amended Complaint.

65. There is no adequate remedy at law for the harm to Dr. Yessenow's credit rating and the mortgage lien on his Chicago condominium.

**ANSWER:** Defendants deny the allegations contained in Paragraph 64 of the Amended Complaint.

66. Plaintiff Dr. Yessenow is likely to prevail on the merits of his claim as set forth above regarding Defendant Dr. Hudson's and Defendant Wright's constructive fraud.

**ANSWER:** Defendants deny the allegations contained in Paragraph 64 of the Amended Complaint.

67. The harm which will be suffered by Dr. Yessenow if injunctive relief is not entered, outweighs the harm to the Defendants if it is granted.

**ANSWER:** Defendants deny the allegations contained in Paragraph 67 of the Amended Complaint.

68.     The interest of the public will not be disturbed by granting Dr. Yessenow a constructive trust.

**ANSWER:**     Defendants deny the allegations contained in Paragraph 68 of the Amended Complaint.

**WHEREFORE**, Defendants Hilton M. Hudson II, M.D., Hilton Publishing, Inc., Leroy J. Wright, Wright Capital Partners, LLC, and Wright Group International Holdings, LLC respectfully request that the court enter judgment in their favor and against Plaintiff on Count III of the Complaint and grant all other just and proper relief in the premises.

### COUNT IV - BREACH OF CONTRACT

69.     Plaintiff hereby incorporates Paragraphs 1 to 68 as Paragraph 69.

**ANSWER:**     Defendants' responses to Paragraphs 1 through 68 are incorporated herein by reference.

70.     On March 30, 2006, TWG Illiana Surgery and Medical Center, Inc. and iHealthcare, Inc. signed an Indemnity Agreement whereby they would indemnify Dr. Yessenow for any liability arising from the personal Line of Credit he was issued to secure the Letter of Credit necessary for the AIC Ventures sale/leaseback transaction.

**ANSWER:**     Pragraph 70 calls for a legal conclusion, and thus no answer is required. To the extent an answer is required, Defendants admit that TWG Illiana Surgery and Medical Center, Inc. and iHealthcare, Inc. executed a document entitled "Indemnification Agreement" and dated March 30, 2006. Defendants deny the remaining allegations of Paragraph 70 of the Amended Complaint.

71.     TWG Illiana Surgery and Medical Center, Inc. and iHealthcare, Inc. have since merged to become Heartland Memorial Hospital, Inc., of which the sole asset is Heartland Memorial Hospital, LLC, now in bankruptcy.

**ANSWER:**     Defendants admit that TWG Illiana Surgery and Medical Center, Inc. and iHealthcare, Inc. merged to become Heartland Memorial Hospital, Inc., and that Heartland Memorial Hospital, LLC is now in bankruptcy.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 71 of the Amended Complaint.


72.     The Indemnity Agreement states that Dr. Yessenow would be paid upon demand and prior to any payments required by Dr. Yessenow.

**ANSWER:**     Paragraph 72 of the Amended Complaint calls for a legal conclusion, and thus no answer is required.  To the extent an answer is required, Defendants deny the allegations contained in Paragraph 72 of the Amended Complaint.


73.     The Indemnity Agreement states that Dr. Yessenow will be reimbursed for any attorneys fees or other costs or fees arising under the Agreement.

**ANSWER:**     Paragraph 73 of the Amended Complaint calls for a legal conclusion, and thus no answer is required.  To the extent an answer is required, Defendants deny the allegations contained in Paragraph 73 of the Amended Complaint.


74.     Defendants guaranteed this Indemnity Agreement.

**ANSWER:**    Paragraph 74 of the Amended Complaint calls for a legal conclusion, and thus no answer is required.  To the extent an answer is required, Defendants deny the allegations contained in Paragraph 74 of the Amended Complaint.


75.    Dr. Yessenow has fulfilled all obligations under the terms of the Indemnification Agreement.

**ANSWER:**    Paragraph 75 of the Amended Complaint calls for a legal conclusion, and thus no answer is required.  To the extent an answer is required, Defendants deny the allegations contained in Paragraph 75 of the Amended Complaint..


76.    Dr. Yessenow has made proper notice to Defendants that the Corporation has failed to perform the obligations under the Agreement for which they agreed to guarantee and indemnify Dr. Yessenow and said notice sufficiently advised the Defendants that Dr. Yessenow has incurred significant liabilities and expenses with continuing liability with respect to the obligation.

**ANSWER:**    Paragraph 76 of the Amended Complaint calls for a legal conclusion, and thus no answer is required.  To the extent an answer is required, Defendants deny the allegations contained in Paragraph 76 of the Amended Complaint.


77.    Defendants Hudson and Wright have breached the terms of the Indemnification Agreement by failing and/or refusing to indemnify Dr. Yessenow for the contractual obligation of the Line of Credit created by the draw from the Letter of Credit.

**ANSWER:**    Defendants deny the allegations contained in Paragraph 77 of the Amended Complaint.

78.     Dr. Yessenow has been harmed by Defendants' breach of the Indemnity Agreement through the accumulation of legal fees required negotiate with National City Bank and bring this lawsuit.

**ANSWER:**     Defendants deny that they have committed any breach.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 78 of the Amended Complaint.

**WHEREFORE**, Defendants Hilton M. Hudson II, M.D., Hilton Publishing, Inc., Leroy J. Wright, Wright Capital Partners, LLC, and Wright Group International Holdings, LLC respectfully request that the court enter judgment in their favor and against Plaintiff on Count IV of the Complaint and grant all other just and proper relief in the premises.

## SECOND DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## THIRD DEFENSE

Plaintiff's claims related to the purported Indemnification Agreement are barred by the doctrine of accord and satisfaction.

## FOURTH DEFENSE

The purported Indemnification Agreement is not binding and thus unenforceable for lack of consideration.

## FIFTH DEFENSE

Plaintiff's claims are barred by his bad faith and unclean hands.

## SIXTH DEFENSE

Plaintiff's claims are barred by the doctrine of estoppel.

## SEVENTH DEFENSE

Plaintiff's claims are barred by fraud.

## EIGHTH DEFENSE

Plaintiff's claims related to the purported Indemnification Agreement are barred by the doctrine of payment.

## NINTH DEFENSE

Defendants deny each and every allegation in the Amended Complaint to which no specific response has otherwise been made.

## TENTH DEFENSE

Defendants reserve the right to assert other defenses to the allegations set forth in the Complaint that are not currently known to them but may become known in the future.

WHEREFORE, Defendants Hilton M. Hudson II, M.D., Hilton Publishing, Inc., Leroy J. Wright, Wright Capital Partners, LLC, and Wright Group International Holdings, LLC respectfully request that the Court dismiss this action in its entirety, that Plaintiff take nothing by way of his Complaint, that Defendants be granted attorneys' fees and costs, and for all other relief just and proper in the premises.

## DEFENDANTS' RESTATED AMENDED COUNTERCLAIM

Pursuant to Fed.R.Civ.P. 13(b), Counterclaimants Hilton M. Hudson II, M.D., Hilton Publishing, Inc., Leroy J. Wright, Wright Capital Partners, LLC, and Wright Group International Holdings, LLC hereby re-state and re-allege their Amended Counterclaim against Counterdefendant Jeffrey R. Yessenow, M.D. as follows:

## Parties

1.  Counterclaimant Wright is a citizen of Illinois.

2.  Counterclaimant Hudson is a citizen of Illinois.

3.	Counterclaimants Wright Capital Partners, LLC and Wright Group International Holdings, LLC are both citizens of Illinois.

4.	Upon information and belief, counterdefendant Jeffrey R. Yessenow, M.D. ("Dr. Yessenow") is a citizen of Indiana.

## Operative Facts

### I.  The Women's Wellness Center Transactions

5.	The Women's Wellness Center, P.C. ("WWC") is an Indiana Professional Corporation located in Munster, Indiana.

6.	Dr. Yessenow was also the President, Treasurer, Secretary, sole member of the Board of Directors, and sole shareholder of WWC prior to June 16, 2003.

7.	On or about June 16, 2003, Illiana Surgery & Medical Center, LLC ("Illiana") entered into an agreement with Dr. Yessenow known as a "Stock Purchase Agreement." *See* Complaint, *In re: Heartland Memorial Hospital, LLC, Heartland Memorial Hospital, LLC v. Jeffrey Yessenow*, M.D., Case No. 07-20188-JPK-11, at ¶11 (Ex. A hereto).

8.	Under the Stock Purchase Agreement, Dr. Yessenow was to sell 100% of the issued and outstanding shares of WWC ("WWC Stock") to Illiana in exchange for (i) $1,000,000 in cash at closing, (ii) $1,000,000 to be paid under a promissory note encaptioned Non-negotiable Promissory Note (with Security Agreement)("Note"), and (iii) $1,000,000 to be paid under a Development and Consulting Services Agreement ("Consulting Agreement").

9.	The ability to be the legal owner of the WWC Stock by Illiana and the transferability of WWC Stock from Yessenow to Illiana was the basic requirement and assumption on which the Stock Purchase Agreement was made.  The consideration to be paid by Illiana to Yessenow under the Stock Purchase Agreement, i.e., the $1 million cash, payments under the Note, and Consulting Agreement, were all for ownership of the WWC Stock.

10. At closing (or thereafter) of the transaction contemplated by the Stock Purchase Agreement, Illiana issued the Note and Consulting Agremeent.

11. However, Yessenow failed to fulfill his obligations under the Stock Purchase Agreement.

12. At all relevant times, as a matter of law, pursuant to the Professional Corporations Act, Indiana law IC § 23-1.5, *et seq.* (the "PCA"), any attempted transfer of WWC Stock by Yessenow to Illiana was void. Illiana could not hold stock of WWC, which was an Indiana professional medical corporation.

13. The PCA restricts ownership of stock in a professional corporation to the following entities:

   a. Individuals who are not authorized by Indiana law or the laws of another state to render a professional service permitted by the articles of incorporation of the corporation;

   b. General partnerships in which all the partners are authorized by Indiana law or the laws of another state to render a professional service permitted by the articles of incorporation of the corporation;

   c. Professional corporations authorized by Indiana law or the laws of another state to render a professional service permitted by the articles of incorporation of the corporation; and

   d. the trustee of a qualified trust.

IC 23.1.5-3.1(a). Illiana is none of these entities.

14. Under the PCA, all shares issued to unqualified entities, in violation of IC 23-1.5-3-1(a), are void. IC 23-1.5-3-1(b).

15. At the time it entered the Stock Purchase Agreement, Illiana did not know that the transfer of shares of WWC Stock to Illiana was void.

16.     Because Illiana is not an entity qualified to hold the stock of a professional corporation, the shares of WWC Stock purportedly transferred by Yessenow to Illiana are void and without value.

17.     After the date of the Stock Purchase Agreement, WWC continued to operate under Yessenow's supervision and control.  On information and belief, Yessenow remained in control of WWC, acting as its medical director, director and/or president.

18.     On information and belief, at all times, Yessenow was in the position to direct or otherwise influence the management of Illiana to make payments which would financially benefit Yessenow individually.

19.     Beginning on or about August 1, 2003, continuing until at least in or about December 2004, Illiana transferred to Yessenow $524,910.70 in payments on the Note ("Note Payments").

20.     Beginning on or about August 1, 2003, continuing until at least in or about December 2004, Illiana transferred to Yessenow $283,333.39 in payments under the Consulting Agreement ("Consulting Payments").

21.     Yessenow performed no services for Illiana in exchange for the Consulting Payments.

22.     After closing on the Stock Purchase Agreement and through December 2006, Illiana paid, directly or indirectly, $3,506,962 in debts and expenses of WWC for which WWC reimbursed Illiana only $1,934,785, leaving Illiana having paid out $1,572,177 for which Illiana was never reimbursed ("Unreimbursed Expenses").

23.     Because any attempted transfer of the WWC stock to Illiana was void, Illiana never received anything of value from Yessenow in exchange for the Note Payments, Consulting Payments, or the Unreimbursed Expenses.

24.     Because any attempted transfer of the WWC Stock to Illiana was void, all of the Note Payments, Consulting Payments, and Unreimbursed Expenses were made without consideration and for which Illiana received no value.

25.     At the time Illiana made the Note Payments, Consulting Payments, and Unreimbursed Expenses, Illiana was insolvent, such payments caused Illiana to become insolvent, greatly reduced the assets of Illiana's estate, and/or stripped Illiana of property available to pay its creditors.  Illiana incurred debt at the time and after the Note Payments, Consulting Payments, and Unreimbursed Expenses were made.

26.     The Note Payments, Consulting Payments, and Unreimbursed Expenses were made out of the ordinary course of Illiana's business and differed from customary business terms.

27.     Since Illiana does not and could not own the WWC Stock, Illiana received no benefit for the Unreimbursed Expenses.  Instead, Yessenow, as owner of WWC Stock, received the benefit of the Unreimbursed Expenses that Illiana paid.

28.     At all relevant times, but beginning no later than November 13, 2003, Yessenow was an insider of Illiana.

## II.   The Counterclaimants' Investments

29.     In 2005-2006, Dr. Hudson, Mr. Wright, Wright Capital Partners, LLC, and Wright Group International Holdings, LLC participated as investors in a business transaction in which Illiana merged with IH Acquisition, Inc. and iHealthcare, Inc. The surviving entity was renamed Heartland Memorial Hospital, LLC ("Heartland/Illiana").

30. Dr. Hudson, a cardiac surgeon who provided physician services to Heartland/Illiana, invested $1.5 million of his own money in Heartland/Illiana's stock in 2006.

31. Wright Capital Partners, LLC, d/b/a Wright Group International Holdings, LLC ("Wright Capital Partners") invested in the business transaction in which Illiana merged with IH Acquisition, Inc. and iHealthcare, Inc. Following that transaction, Wright Capital Partners owned 60% of Heartland/Illiana. Mr. Wright was the sole member of Wright Capital Partners.

32. Yessenow persuaded Mr. Wright and other shareholders to make him CEO of Heartland/Illiana on the basis of, among other things, his representation that he had positive relationships with a large network of physicians who would provide services for the hospital and grow its revenue.

33. Yessenow also persuaded Mr. Wright to sell Wright Capital Partners' 60% interest in Illiana for $8 million to Heartland Memorial Holdings. The sale was made in the form of debt secured by a note, pursuant to a Redemption Agreement, in order to raise capital for the hospital. Yessenow represented that, on behalf of Heartland Memorial Holdings, he would sell that interest to physicians within his network.

34. Yessenow badly mismanaged the hospital. He created chaos among the hospital's leadership team and told falsehoods about members of the team, eroding their morale. He made racially derogatory statements about members of the management team. He inappropriately cut service lines for the hospital, such as orthopedic surgery. He also made defamatory statements about the character and professional qualifications of members of the management team and board of directors.

35. Further, Yessenow's relationships with the physicians he represented would provide services to Heartland were contrary to his representation. During his tenure as CEO of

Heartland, he alienated so many of the physicians, by fostering a culture of mistrust and animosity and making misrepresentations about the members of the Board of Directors to other directors, executives, and physicians, that between one-third and one-half of the physicians left the hospital.

36.     Without the support of the physicians and managers that Yessenow alienated, the hospital could not bring in revenue adequate to sustain its operations.  He also could not sell any of the equity in Heartland Memorial Holdings and failed to raise capital for the hospital as a result. As a direct result of Yessenow's mismanagement and other actions recited herein, the hospital was rendered insolvent and had to sell its assets at a tremendous loss and file for bankruptcy.

37.     Dr. Hudson lost money a result of the bankruptcy.

38.     Yessenow had no intention of causing Heartland Memorial Holdings to pay Mr. Wright or Wright Capital Partners on the debt and note.  Heartland Memorial Holdings failed entirely to pay and defaulted on the note.

39.     The $8 million note was Wright Capital Partners' biggest asset.  The default on that note represented a complete loss.  Wright Capital Partners was rendered entirely insolvent and had to be dissolved.

40.     Yessenow's mismanagement also resulted in Munster Medical Holdings having to sell the land that the hospital campus occupied.

41.     Yessenow conspired with Neil Fribley, the manager of Munster Medical Holdings, to increase the asking price for Munster Medical Holdings' land from approximately $4 million to approximately $7 million so that Yessenow, who owned 30% of Munster Medical Holdings, would receive a larger payment upon the consummation of that sale.

## COUNT I

## Breach of Fiduciary Duty

42.     Counterclaimants reallege and incorporate the preceding paragraphs 1-41 as though fully set forth herein.

43.     As President and Chief Executive Officer of Illiana, Yessenow owed fiduciary duties to Heartland/Illiana and its shareholders, including Counterclaimants.

44.     Yessenow breached those duties by, among other things, knowingly participating in the void transfer of WWC Stock to Heartland/Illiana; accepting all of the benefits Heartland/Illiana conferred upon him, directly through the Note Payments and Consulting Payments and indirectly through the Unreimbursed Expense, among other things; causing or influencing Heartland/Illiana to make transfers to Yessenow without consideration, while Heartland/Illiana was insolvent or which caused Heartland/Illiana to become insolvent, which greatly reduced the assets of Heartland/Illiana's estate and/or which stripped Heartland/Illiana of property available to pay its creditors; causing or influencing Heartland/Illiana to make transfers to Yessenow at the time and after Heartland/Illiana was incurring debt; causing or influencing Heartland/Illiana to make transfers to Yessenow out of the ordinary course of Heartland/Illiana's business and differing from its customary business practices; causing the purchase price of Munster Medical Holdings to be artificially increased to artificially increase the value of his ownership interest; failing to pay payroll taxes for the physicians practicing at Heartland/Illiana; and engaging in other acts of self-dealing.

45.     Yessenow also breached those duties by, among other things, failing to exercise due care in his management of the hospital; intentionally acting to create an atmosphere of mistrust and hostility among the management and staff of the hospital; disclosing confidential information to third parties to the detriment of members of the Board of Directors of

Heartland/Illiana; undermining the morale of the physicians at the hospital, causing nearly half of the physicians to quit during his tenure as CEO; and acting out of racial and/or other discriminatory animus.

46.     Yessenow's acts as recited herein destroyed the value of Heartland/Illiana and rendered its shareholders' ownership interests worthless.

47.     Yessenow's acts as recited herein were done in bad faith and for an improper purpose.

48.     Heartland/Illiana and its shareholders, including Counterclaimants, have been damaged as a direct result of Yessenow's acts as recited herein. Counterclaimants have, among other things, lost money they invested in Heartland/Illiana.

## COUNT II

## Unjust Enrichment

49.     Counterclaimants reallege and incorporate the preceding paragraphs 1-48 as though fully set forth herein.

50.     As the result of the acts recited herein, Yessenow has been unjustly enriched.

51.     Yessenow received measurable benefits, including, among other things, the Note Payments, Consulting Payments, Unreimbursed Expense, and transfers made from Heartland/Illiana without consideration and outside the ordinary course of its business.

52.     Under the circumstances recited herein, including Yessenow's acts recited herein which were performed in violation of his fiduciary duties, Yessenow's retention of the benefits he received, without reimbursement or repayment to Counterclaimants, would be unjust.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimants respectfully request that the Court enter judgment in their favor and against counterdefendant Dr. Jeffrey R. Yessenow as follows:

A.     A monetary award to the Plaintiffs of the damages that they have sustained as a result of Yessenow's breaches of fiduciary duty;

B.     A monetary award to the Plaintiffs equal to the amount by which Yessenow has been unjustly enriched;

C.     An award of the Plaintiffs' costs of litigation, including reasonable attorneys' fees;

D.     An award of pre-judgment and post-judgment interest, as provided by law;

E.      An award to the Plaintiffs of punitive damages in an amount to be determined at trial; and

F.     All other just and proper relief.

Counterclaimants demand a trial by jury.

Respectfully submitted,


*/s/ Jennifer Westerhaus Adams*
Harold R. Bickham
Jennifer Westerhaus Adams
**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, Indiana  46204
Telephone:  317.231.7424
Facsimile:  317.231.7433
E-mail:  hbickham@btlaw.com
            jadams@btlaw.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that, on May 8, 2009, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Paul A. Rossi, Esq.
LAW OFFICE OF PAUL A. ROSSI, LLC
725 East Commercial Avenue
Lowell, Indiana 46356
paulrossi@paulrossilaw.com

Thomas E. Patterson, Esq.
Kristi L. Browne, Esq.
Joseph W. Barber, Esq.
Ryan A. Sawyer, Esq.
The Patterson Law Firm, LLC
One N. La Salle St., Suite 2100
Chicago, Illinois 60602
tpatterson@pattersonlawfirm.com
kbrowne@pattersonlawfirm.com
jbarber@pattersonlawfirm.com
rsawyer@pattersonlawfirm.com

*/s/ Jennifer Westerhaus Adams*
Jennifer Westerhaus Adams