UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JEFFREY R. YESSENOW, | ) |
| | ) |
| Plaintiff/Counterdefendant, | ) |
| | ) |
| v. | ) NO. 2:08-CV-353 PPS |
| | ) |
| HILTON M. HUDSON II, *et al.*, | ) |
| | ) |
| Defendants/Counterclaimants. | ) |

**OPINION AND ORDER**

Several years ago, Dr. Jeffrey Yessenow decided to go into business with his colleague Dr. Hilton Hudson, and Leroy Wright, a private investor. What resulted was a hodgepodge of business entities which eventually turned out to be a disaster for all concerned. The only thing that is really clear at this point is that no one seems to understand what exactly took place. As best as I can determine, the plan was to invest in certain health centers and provide capital for hospital-related transactions in Northwest Indiana. It turned out to be a bad idea. The business relationship between Yessenow, Hudson and Wright soon fell apart and Yessenow now claims that Hudson and Wright owe him over one and half million dollars pursuant to an indemnification agreement. Yessenow filed this case to recover that sum and Hudson and Wright have countersued. In their counterclaims Wright and Hudson allege Yessenow breached his fiduciary duties as an officer of some of the health centers and that he was unjustly enriched as a result. Yessenow has moved to dismiss these counterclaims [DE 43, 65] and, for the following reasons, the motion is denied.

**I. BACKGROUND**

As I have said, nothing is particularly clear in this case. The facts, as I state them below,

come (as they must) from Wright and Hudson's counterclaim with some fleshing out from the original complaint filed by Yessenow. (Although Wright and Hudson are counterplaintiffs, I will refer to them in this Order under their original designation as "Defendants"). According to Defendants, Yessenow was formerly the sole director and shareholder of Women's Wellness Center ("WWC"), an Indiana professional corporation located in Munster, Indiana. (DE 32, Am. Countercl. ¶¶ 5-6.) Yessenow agreed to sell his shares of WCC stock to Illiana Surgery & Medical Center in exchange for: (1) $1 million cash; (2) a $1 million promissory note; and (3) $1 million to be paid under a consulting agreement. (*Id.* ¶¶ 7-8.) At the close of this transaction, Illiana executed the note and the consulting agreement. (*Id.* ¶ 10.) Yessenow continued to serve as WCC's chief officer, and he became an "insider" of Illiana. (*Id.* ¶¶ 17, 28.) As an insider, Yessenow was in a position to influence the management of Illiana to make payments that would financially benefit him. (*Id.* ¶ 18.) Eventually, Yessenow became the President and CEO of Illiana. (DE ¶ 43.)

Over the next year, Yessenow received over $500,000 in payments on the note and over $200,000 in payments under the consulting agreement. (*Id.* ¶¶ 19-20.) But because Indiana law prohibits Illiana from owning stock in a professional medical corporation, Yessenow's attempted transfer of WCC stock to Illiana is void. (*Id.* ¶¶ 12-14, 16.) Defendants say Illiana was not aware of this restriction at the time it entered into the stock transfer agreement with Yessenow. (*Id.* ¶ 15.) Meanwhile, Illiana paid over $3.5 million in debts and expenses on behalf of WCC, over $1.5 million of which was never reimbursed by WCC. (*Id.* ¶ 22.) These payments were made at a time that Illiana was in financial trouble of its own. (*Id.* ¶ 25.) As a result, Illiana has become insolvent, lost assets, and struggled to pay its creditors. (*Id.*)

Sometime in 2005 or 2006, Hudson and Wright invested in a merger transaction between Illiana and two other entities, which yielded the surviving entity known as Heartland Memorial Hospital, LLC. (*Id.* ¶ 29.) Hudson personally invested $1.5 million in Heartland. (*Id.* ¶ 30.) And Wright, through Wright Capital Partners, obtained a 60% ownership in Heartland. (*Id.* ¶ 31.) Heartland's investors appointed Yessenow as CEO of the merged entity, and if one believes the Defendants, matters quickly went to hell in a hand basket. (*Id.* ¶ 32.) Yessenow mismanaged the hospital, alienated management and physicians, and inappropriately cut service lines. (*Id.* ¶¶ 34-35.) As a result, Heartland was unable to generate enough revenue to maintain its operations. (*Id.* ¶ 36.) The hospital was forced to sell its assets at a tremendous loss and file for bankruptcy, which caused Hudson to lose a lot of money. (*Id.* ¶ 37.)

Wright also took a huge financial hit in the process. Prior to the bankruptcy, Yessenow convinced Wright to sell his 60% majority ownership in the hospital to another entity, Heartland Memorial Holdings ("Heartland Holdings"). (*Id.* ¶ 33.) The purpose of the sale was to generate capital for Heartland. (*Id.*) In exchange for his equity interest, Wright would receive a $8 million promissory note. (*Id.*) Yessenow would then sell that interest on behalf of Heartland Holdings to other physicians and use the proceeds for the hospital. (*Id.*) That plan backfired; Yessenow was never able to sell the equity in Heartland, so Heartland never got its capital, which led Heartland Holdings to default on the note to Wright. (*Id.* ¶¶ 36, 38.) The $8 million note was the primary asset of Wright Capital Partners. (*Id.* ¶ 39.) So when Heartland Holdings defaulted, Wright Capital Partners was rendered insolvent. (*Id.*) Wright now claims Yessenow never intended for Heartland Holdings to make good on the note. (*Id.* ¶ 38.) It was just a ruse to get Wright to give up his interest.

Defendants have filed two counterclaims based on these allegations. First, they claim Yessenow breached his fiduciary duties as President and CEO of Heartland/Illiana. (*Id.* ¶¶ 42-48.) Second, they assert that Yessenow was unjustly enriched when he received, without consideration: payments from the WCC stock sale, benefits from Illiana's unreimbursed payments for WCC's, and benefits from transfers made by Illiana and Heartland. (*Id.* ¶¶ 49-52.)

## II. DISCUSSION

The minimum requirements for pleading a claim for relief are contained in Federal Rule of Civil Procedure 8. That rule requires, in pertinent part, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) meanwhile provides for the dismissal of claims that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).

The Supreme Court has retooled its interpretation of the pleading standards in recent years, beginning with its opinion in *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544 (2007). Just prior to the entry of this order, the Supreme Court readdressed the *Bell Atlantic* decision and stated: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- S.Ct. ---, 2009 WL 1361536, at *12 (2009). Determining whether a complaint states a plausible claim for relief requires me to draw on my judicial experience and common sense. *Id.* at *13. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at *12. Instead, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* At this stage, I must accept all allegations as true and draw all reasonable inferences in the complainant's favor. *Id.* at *13. But I need not accept as true threadbare legal conclusions supported only by mere conclusory statements. *Id.*

4

At the outset I must say that the breach of fiduciary duty claim confuses me. Defendants allege, "[a]s President and Chief Executive Officer of Illiana, Yessenow owed fiduciary duties to Heartland/Illiana and its shareholders, including Counterclaimants." (DE 32 ¶ 43.) But what exactly is "Heartland/Illiana"? Early in their counter-complaint, Defendants state that "Heartland/Illiana" refers to Heartland. (*Id.* ¶ 29.) But later, they use "Heartland/Illiana" to refer to both Heartland and Illiana interchangeably. (*Id.* ¶ 44.) What complicates matters more is that Defendants admit in their response brief that they "describe[d] the entities involved in the events central to their claims inaccurately" and that they are still figuring out the facts about these entities. (DE 52 at 2.)

Plaintiff, for his part, attempts to cure the confusion by telling his own version of the corporate history of the many entities involved in this story. (DE 44.) But in his version, Plaintiff appears at times to conflate Heartland with Heartland Holdings. *See id.* at 6. Both sides accuse the other of misrepresenting the facts and point me to other state and federal litigation involving these entities to make their case. Trying to navigate through this thicket of finger pointing is tiring. And just because someone may have said something in another case does not make it true. At this point the only thing I'm convinced of is that there is much to be sorted out. So for purposes of the instant motion, all I can rely on are the facts as alleged by Defendants in their counterclaim.

According to the counter-complaint, Heartland and Illiana are actually separate entities; and Illiana purportedly ceased to exist when it merged with other medical centers to form the surviving entity Heartland. (*See id.* ¶ 29.) It is not clear why Yessenow, as an officer of Illiana (a pre-merger entity), owed a duty to Heartland (the post-merger entity). Instead, it seems that

5

Defendants are really alleging that Yessenow breached his fiduciary duties both as an officer of Illiana and as an officer of Heartland, so I will give them the benefit of the doubt that they are pursuing both of these claims.

In either case, there is no way that Yessenow owed a duty to Illiana's or Heartland's shareholders because, as Indiana limited liability companies, neither entity has shareholders. Instead they have members who own interest in the company, either by way of economic rights or a share of the profits. IND. CODE § 23-18-1-10. This is ultimately a distinction without a difference since members of an LLC owe fiduciary duties to one another similar to shareholders in a closely-held corporation or partners in a partnership. *See Purcell v. S. Hills Inv., LLC*, 847 N.E.2d 991, 997 (Ind. App. Ct. 2006).

Yessenow argues that the breach of fiduciary duty claim must be dismissed for two reasons. First, Yessenow believes that Defendants are really trying to sue him as shareholders of Heartland Holdings. Since Heartland Holdings is a Maryland corporation, Yessenow insists that Maryland law requires Defendants to pursue their claims derivatively. This argument is very hard to follow. Defendants have only alleged that Yessenow breached his duties as an officer of Illiana and Heartland, both of which are Indiana limited liability companies. Nothing in Defendants' counter-complaint indicates that Yessenow's actions as an officer of Heartland Holdings – or any other Maryland entity – are at issue in this case. Therefore this argument does not merit further consideration.

Second, Yessenow informs me that Heartland is in bankruptcy proceedings. Therefore any derivative claim brought on behalf of Heartland is an asset of the bankrupt estate that must be asserted in bankruptcy court. *See Kennedy v. Venrock Assocs.*, 348 F.3d 584, 589 (7th Cir. 2003). This also applies to any claim brought on behalf of Illiana because when Illiana merged

into Heartland, its derivative claims became assets of Heartland. *See Long v. Biomet, Inc.*, 901 N.E.2d 37, 40-41 (Ind. App. Ct. 2009). This raises the question: are Defendants' breach of fiduciary duty claims derivative, or are they direct claims that may be brought directly by Defendants in their own right? The answer to this question comes from the law of the state of incorporation – in this case, Indiana. *See Kennedy*, 348 F.3d at 589. In Indiana, a derivative action is a suit asserted by a shareholder on behalf of the corporation against a third party to redress an injury, or to enforce a duty owed, to the corporation. *G&N Aircraft v. Boehm*, 743 N.E.2d 227, 234 (Ind. 2001). A direct action, on the other hand, is a lawsuit to enforce a shareholder's rights against a corporation – such as, for instance, to enforce the right to vote, to compel dividends, to prevent fraud against minority shareholders, to inspect corporate records, or to compel shareholder meetings. *Id.*

The distinction between derivative and direct claims is complicated in the situation of LLCs. *See Purcell*, 847 N.E.2d at 1001. LLCs often have few members, who are regarded more as partners with direct obligations to one another than as mere shareholders in a corporation. *See id.* The Court may therefore, in its discretion, treat a claim by one member against another member as a direct action if it determines that form of action would not: (1) unfairly expose the LLC to a multiplicity of actions; (2) materially prejudice the interests of the LLC's creditors; or (3) interfere with a fair distribution of the recovery among all persons with an interest in the claim. *Id.*; *see also Barth v. Barth*, 629 N.E.2d 559, 562 (Ind. 1995).

In this case, Defendants accuse Yessenow of self-dealing, mismanagement, and failing to exercise due care, thereby destroying the value of Heartland and Illiana and rendering their members' interests worthless. (DE 32 ¶¶ 45-46.) At first blush, these claims appear to be more

common to the members as a whole rather than personal in nature. But since Heartland and Illiana are LLCs, special consideration must be given to the factors prescribed in *Barth* and *Purcell* before dismissing the claims as derivative. At this point in the litigation, I simply have too little information to determine whether Defendants' breach of fiduciary duty claims should be treated as direct or derivative claims. For example, I have no idea how many members Heartland has, or Illiana had, or who those members are and whether or not they have a stake in this litigation. Nor am I certain at this stage that Defendants are included among the members of Heartland or Illiana. Indeed, Yessenow suggests they are not. (DE 56 at 4.) Moreover, the parties have not informed me if the articles of organization, or any other charters or bylaws, prescribe who is authorized to sue on behalf of Heartland. *See* IND. CODE § 23-18-8-1. And Defendants have made it clear that they have not yet sorted out the corporate history in this case.

My job in this instant motion is to determine whether Defendants have stated a plausible claim, which they have. *See Iqbal*, 2009 WL 1361536, at *12 (2009). With so little information known at this stage, it would be premature to dismiss these claims as derivative. The prudent course of action is to let the parties flesh out the facts in discovery. After more is known about this case, Yessenow may persuade me that the fiduciary claims belong in bankruptcy court. But that is an issue better reserved for summary judgment.

Defendants may also proceed on their unjust enrichment claim. Under Indiana law, claimants may recover under the theory of unjust enrichment if they establish that a measurable benefit has been conferred on the other party under such circumstances that the party's retention of the benefit without payment would be unjust. *See Zoeller v. E. Chicago Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009). Defendants claim that Yessenow received undeserved payments during the WCC transaction, unreimbursed expenses, and improper transfers from

Heartland and Illiana through self-dealing and without consideration. (DE 32 ¶ 51-2.) These allegations set forth an unjust enrichment claim. Yessenow argues that this claim is also derivative in nature. But for reasons stated above, it is too early to make that call.

For the foregoing reasons, Plaintiff's Motion to Dismiss Defendants' Counterclaims [DE 43, 65] is **DENIED**.

**SO ORDERED.**

ENTERED: June 2, 2009

 s/ Philip P. Simon  
PHILIP P. SIMON, JUDGE  
UNITED STATES DISTRICT COURT
