UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JEFFREY R. YESSENOW, M.D., )<br>Plaintiff, )<br>v. )<br>)<br>HILTON M. HUDSON, II, M.D., )<br>individually, HILTON PUBLISHING, INC. )<br>an Illinois corporation, LEROY J. )<br>WRIGHT, individually, WRIGHT )<br>CAPITAL PARTNERS, LLC, an Illinois )<br>Limited Liability Company, and WRIGHT )<br>GROUP INTERNATIONAL HOLDINGS, )<br>LLC, an Illinois Limited Liability Company,)<br>Defendants. )<br>------------------------------------------------------- )<br>HILTON M. HUDSON, II., M.D., LEROY )<br>J. WRIGHT, WRIGHT CAPITAL )<br>PARTNERS, LLC, and WRIGHT )<br>GROUP INTERNATIONAL HOLDINGS, )<br>LLC., )<br>Counterclaimants, )<br>v. )<br>)<br>JEFFREY R. YESSENOW, M.D., )<br>Counterdefendant. ) | Cause No. 2:08-CV-353 |

OPINION AND ORDER

This matter is before the court on the Verified Motion to Compel Discovery [DE 73] filed by the plaintiff, Dr. Jeffrey Yessenow, on December 28, 2009, and on the Motion for Hearing Oral Argument [DE 77] filed by the defendant, Dr. Hilton Hudson, on January 11, 2010. For the following reasons, the Verified Motion to Compel Discovery is **GRANTED**, and the Motion for Hearing Oral Argument is **DENIED**.

<u>Background</u>

This motion arises out of a dispute about an indemnity agreement. The plaintiff, Jeffrey Yessenow, and the defendant, Hilton Hudson, both practiced medicine at and were investors in

1

what is now known as Heartland Memorial Hospital. Leroy Wright, a banker, also was a major investor in the Hospital. In March of 2006, TWG Illiana Surgery and Medical Center, Inc., merged with iHealthcare, Inc., to create Heartland Memorial Holdings, Inc., whose main asset was Heartland Memorial Hospital, LLC. Hudson was the Chairman of TWG, and Wright was the Chairman of iHealthcare. After the merger, Yessenow became the CEO of Heartland Memorial Hospital, Hudson was chairman of the hospital and a substantial minority shareholder of Heartland Memorial Holdings, Inc., and Wright was the majority shareholder of Heartland Memorial Holdings, Inc.

This merger was financed in large part by a venture capital company, AIC Ventures, and resulted in an agreement between AIC Ventures and Heartland Memorial Hospital to purchase five of the Hospital's ancillary medical facilities through a sale/leaseback transaction. However, AIC Ventures required an initial security deposit of one-year's rent, roughly $1.5 million, in case the Hospital defaulted on any payments. According to Yessenow, Hudson and Wright asked him to post the initial security deposit. So, on March 17, 2006, Yessenow obtained a six month letter of credit, backed by a $1.5 million promissory note and secured by a mortgage on his lakefront condo in downtown Chicago.

On March 23, 2006, the sale/leaseback transaction was consummated. Worried about his exposure under the letter of credit, Yessenow insisted on indemnification from his business partners. On March 31, 2006, the parties entered into an Indemnification Agreement whereby the Hospital would indemnify Yessenow from any losses or expenses incurred as a result of the bank loan. The Hospital's indemnification obligations to Yessenow were guaranteed jointly and severally by Hudson and Wright individually, and their business entities, Hudson Publishing, Wright Capital Partners, and Wright Group Holdings.

2

On March 6, 2008, the bank that purchased Yessenow's promissory note made a demand for a draw on the full amount of the letter of credit. Yessenow looked to the defendants for indemnification, they balked, and this lawsuit followed. Yessenow filed Plaintiff's First Amended Complaint on April 24, 2009, seeking declaratory judgment on the indemnity agreement and asserting claims of constructive fraud, unjust enrichment, and breach of contract.

The defendants filed their Answer to Plaintiff's First Amended Complaint and Restated Amended Counterclaim on May 8, 2009. In their counterclaims for breach of fiduciary duty and unjust enrichment, the defendants assert that Yessenow's mismanagement of the hospital and his acts of self-dealing during his tenure as CEO caused nearly half of the hospital's physicians to quit and destroyed the value of Heartland/Illiana, rendering its shareholders' ownership interests worthless. Yessenow filed his Answer to Defendants' Restated Amended Counterclaim on June 17, 2009, raising the affirmative defenses of unjust enrichment, fraud, and unclean hands.

On August 25, 2009, Yessenow served the defendants with his First Set of Interrogatories. Interrogatory 1 requests that the defendants "identify all bank accounts of Defendants from January 1, 2005, to the present, including, but not limited to, the bank name, account name, and account number." (Pl.'s Interrog. No. 1, Ex. 1 to Pl's Mot. to Compel Def.'s to Answer Interrog., at 8.) The defendants answered the interrogatories on October 12, 2009, but the defendants did not answer Interrogatory 1 and have objected to it "on the grounds that it is irrelevant, overly broad, unduly burdensome, oppressive, harassing, and not reasonably calculated to lead to the discovery of admissible evidence." (Defs.' Answer to Pl.'s Interrog. No. 1, Ex. 2 to Plaintiff's Motion, at 4.)

The parties debated the relevance of Interrogatory 1 through a series of interactions, including a letter dated November 9, 2009, a telephone conference on December 4, 2009, and a

series of emails. Counsel for Yessenow states in the November 9, 2009 letter that Interoggatory 1 "may lead to additional admissible evidence on Plaintiff's/Counter-defendant's first, second, and fifth affirmative defenses to Counter-plaintiffs' counterclaim." (DE 73-4) In an email sent December 7, 2009, counsel for Yessenow asks for a "meet and confer" on the objection to the interrogatory, with counsel for the defendants responding the next day, "I don't believe a separate meet and confer would be necessary . . . the parties' positions on the appropriateness of the requested discovery differ." (DE 73-6)

Yessenow filed this motion on December 28, 2009, requesting that an order compelling the defendants to answer Interrogatory 1 and reimbursement for all costs and attorney's fees in bringing this motion. Yessenow contends that Interrogatory 1 is relevant because the information requested is of a limited time frame that will be admissible in and of itself or lead to information supporting his affirmative defenses of unjust enrichment, unclean hands, and fraud.

To support this motion, Yessenow argues that third-party discovery uncovered irregularities in the defendants' handling of TWG's finances, which Yessenow asserts is involved in the underlying transactions associated with the claims and defenses alleged in this case. He claims that Wright Capital Partners was a majority investor in TWG, and Hudson was an officer and investor in TWG during the relevant time period. He served a subpoena for records of one of TWG's bank accounts which has uncovered some evidence allegedly supporting this defense, including a $300,000.00 check to Hudson from TWG's account, a withdrawal of $170,000.00 in cash from TWG's account by Wright, and the payment of defendants Wright and Wright Capital Partners' legal bills with TWG money. Yessenow contends that the requested financial information will allow him to discover how TWG's money was moved to the detriment of TWG's shareholders and to the defendant's own unjust

4

enrichment, including the misappropriation of at least $900,000.00 in proceeds from the sale/leaseback agreement with the venture capital company. Yessenow contends that the requested information is relevant to his defense.

Defendants Wright and Wright Partners, LLC did not provide a response to Yessenow's motion. However, defendants Hudson and Hilton Publishing filed a response to Plaintiff's motion, as well as a Motion for Hearing Oral Arguments regarding Interrogatory 1, on January 11, 2010. Hudson argues that Yessenow has failed to demonstrate that the requested information is relevant to any claim or defense in this case, and therefore, failed to overcome their objections that Interrogatory 1 is not relevant. Hudson contends there is no connection between the requested information and the parties' dispute over the indemnity agreement, which he argues is the sole issue in this case. As such, he claims that any evidence of fraud, unclean hands, or unjust enrichment by TWG has no effect on any fact at issue and does not help Yessenow to prove any issue in this lawsuit. Finally, Hudson contends that Yessenow failed to make a good faith attempt to resolve this dispute. Hudson requests that this Court sustain his objections to Interrogatory 1, deny Plaintiff's motion to compel discovery, and award him his attorney fees in defending against this motion.

In his reply, Yessenow contends that the claims and defenses in this case are not limited to the indemnity agreement, because the defendants' counterclaims allege that Yessenow's actions as CEO of Heartland/Illiana destroyed the value of Heartland/Illiana and caused defendants to lose their investments in TWG and the value of their stock in TWG. Yessenow argues that the defendants' bank account information is directly relevant to support his defense that any of the defendant's losses were the result of their own mishandling, fraud, and double-dealing. Yessenow further contends that the letter dated November 9, 2009, the telephone

conference, and the emails, demonstrate his good faith attempts to resolve this dispute, and the defendants are unjustified in refusing to provide the requested information.

Discussion

It is not the practice of this court to hold motion hearings, and so the Motion for Hearing Oral Argument [DE 77] filed by the defendant is **DENIED**.

A party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things." **Federal Rule of Civil Procedure 26(b)(1)**. For discovery purposes, relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002)(quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L.E.2d 253 (1978)). Even when information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard. *Borom v. Town of Merrillville,* 2009 WL 1617085, *1 (N.D. Ind. June 8, 2009) (citing *Sanyo Laser Prods., Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 502 (S.D. Ind. 2003)); *see also Adams v. Target*, 2001 WL 987853, *1 (S.D. Ind. July 30, 2001) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."); *Shapo v. Engle*, 2001 WL 629303, *2 (N.D. Ill. May 25, 2001) ("Discovery is a search for the truth.").

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. **Federal Rule of Civil Procedure 37(a)(2)-(3).** The burden "rests upon the objecting party to show why a particular

6

discovery request is improper." ***Gregg v. Local 305 Ibew***, 2009 WL 1325103, *8 (N.D. Ind. May 13, 2009) (citing ***Kodish v. Oakbrook Terrace Fire Protection Dist.***, 235 F.R.D. 447, 449-50 (N.D. Ill. 2006)); ***McGrath v. Everest Nat. Ins. Co.***, 2009 WL 1325405, *3 (N.D. Ind. May 13, 2009) (internal citations omitted); ***Carlson Restaurants Worldwide, Inc. v. Hammond Professional Cleaning Services***, 2009 WL 692224, *5 (N.D. Ind. March 12, 2009) (internal citations omitted). The objecting party must show with specificity that the request is improper. ***Cunningham v. Smithkline Beecham***, 206 F.R.D. 474, 478 (N.D. Ind. 2009) (citing ***Graham v. Casey's General Stores***, 206 F.R.D. 253, 254 (S.D. Ind. 2002)). That burden cannot be met by "a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." ***Cunningham***, 255 F.R.D. at 478 (citing ***Burkybile. v. Mitsubishi Motors Corp.***, 2006 WL 2325506, *6 (N.D. Ill. Aug. 2, 2006)) (internal quotations and citations omitted). Rather, the court, under its broad discretion, considers "the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." ***Berning v. UAW Local 2209***, 242 F.R.D. 510, 512 (N.D. Ind. 2007) (examining ***Patterson v. Avery Dennison Corp.***, 281 F.3d 676, 681 (7th Cir. 2002)) (internal quotations and citations omitted).

The sole issue in this motion to compel is Yessenow's Interrogatory 1, which states, "Identify all bank accounts of Defendants from January 1, 2005 to the present, including, but not limited to, the bank name, account name, and account number." (Pl.'s Interrog. No. 1, Ex. 1 to Plaintiff's Motion, at 8.)

7

Defendant Hudson objected to this interrogatory on the grounds that it is "irrelevant, overly broad, unduly burdensome, oppressive, harassing, and not reasonably calculated to lead to the discovery of admissible evidence." (Defs.' Answer to Pl.'s Interrog. No. 1, Ex. 2 to Plaintiff's Motion, at 4.) As the objecting party, Hudson bears the burden of demonstrating with specificity that Yessenow's request for Hudson's bank account information is improper. *Cunningham*, 206 F.R.D. at 478 (citing *Graham v. Casey's General Stores*, 206 F.R.D. 253, 254 (S.D. Ind. 2002)). Hudson argues that this objection is sufficient because his financial information is outside the scope of the claims and defenses at issue, it "has [no] tendency to prove or disprove any fact at issue in the pleadings in this matter" and that Yessenow has failed to provide any explanation for this request that can connect Hudson's bank account information to either the indemnity agreement or Yessenow's affirmative defenses. (Defs.' Resp., p. 6.) However, this argument does no more than recite the "same baseless, often abused litany" which is insufficient to show Yessenow's discovery request is improper. *Cunningham*, 255 F.R.D. at 478 (citing *Burkybile. v. Mitsubishi Motors Corp.*, 2006 WL 2325506, *6 (N.D. Ill. Aug. 2, 2006)) (internal quotations and citations omitted).

The argument that Interrogatory 1 is not relevant fails. First, Hudson contends that the sole issue in this case is the alleged indemnity agreement which has no connection to either TWG's or his own financial information. Although Hudson is correct that Yessenow's original claims were related only to the indemnity agreement, the defendants' counterclaims raise the issues of Yessenow's performance as CEO of Heartland/Illiana, his management of the hospital, and his alleged acts that caused the defendants' financial losses. Because the defendants expanded the scope of litigation, Yessenow is not confined to the indemnity agreement in his defense of their counterclaims. *See Oppenheimer Fund*, 437 U.S. at 350-51 ("Parties may

obtain discovery regarding any matter, not privileged, which is relevant . . . whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . ."); *see also* **Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., Inc.**, 130 F.R.D. 92, 95 (N.D. Ind. Jan. 17, 1990) ("A litigant should not be able to parry a discovery thrust by anticipatory initial skillful pleading when a counterclaim is filed that legitimately broadens the scope of the case.").

Second, Hudson relies on this court's decision in **United States v. Lake County Bd. of Com'rs**, 2006 WL 1660598 (N.D. Ind. June 7, 2006), to argue that Interrogatory 1 is a baseless attempt by Yessenow to seek irrelevant information. In **Lake County Bd.**, this court denied the defendants' motion to compel the production of HUD's personnel files of employees who investigated the plaintiff's discrimination claim under the Fair Housing Act (FHA). *Id*. at *1. The defendants argued that the requested files could reveal evidence of possible misconduct by HUD and the reason for HUD's delay in investigating the claim, which could support their affirmative defenses and allow for a reduction of any damage award. *Id*. at *2-3. However, only the fact of the delay itself, which was obvious from the facts of the case, was relevant to support the defendants' affirmative defenses and an argument for damage reduction. *Id.* at *2-3. Therefore, this court held that the HUD investigative mismanagement and "internal irregularities in the investigative process" leading to the decision to file the action were not relevant to the determination of whether the defendants violated the FHA. *Id*. at *2-3.

Here, by contrast, the defendants' Amended Counterclaim directly raises the issue of Yessenow's alleged mismanagement of Heartland/Illiana that caused the company's economic downfall. Unlike **Lake County Bd.**, any evidence of internal irregularities and mismanagement of Heartland/Illiana and its affiliate companies is relevant to the defendant's counterclaim and

9

Yessenow's defenses. Yessenow contends that the defendants' bank account information is relevant to establishing his affirmative defenses of fraud, unjust enrichment, and unclean hands, because it may provide evidence that the defendants' alleged losses were "the result of their own mishandling and double dealing." (Pl.'s Reply, p. 7.) Yessenow asserts that a subpoena on one of TWG's bank accounts already has uncovered some evidence to support this defense, including a $300,000.00 check to Hudson from TWG's account, a withdrawal of $170,000.00 in cash from TWG's account by Wright, and the payment of Defendants Wright and Wright Capital Partners' legal bills with TWG money.

Yessenow argues that the requested bank account information from the defendants will allow him to discover how both TWG and the defendants' money was moved for the defendants' own unjust enrichment, proving that the defendants misappropriated at least $900,000.00, and revealing any other improper payments that could support his defense. Based on these arguments, Interrogatory 1 is relevant to Yessenow's defense and seems reasonably calculated to lead to admissible evidence that the defendants' alleged damages were the result of their own mishandling and double dealing rather than his own actions. *See, e.g.,* ***Simon v. Whichello***, 2006 WL 2042154, * 3-4 (N.D. Ind. July 18, 2006) (holding bank statements and loan documents for three years following stock sale were relevant to allegations of misrepresentation regarding the stock value and company's financial condition, because the "reveal[ed] the financial status of the business and the changes, if any, in that condition."); ***Data-Link Sys., Inc. v. Data Line Serv., Inc.***, 148 F.R.D. 225, 227-228 (N.D. Ind. May 28, 1992) (holding plaintiff's request for "[a]ll monthly and annual financial statements . . . income statements, balance sheets and cash flow statements . . . that in any way relate to Defendant's revenues, profits or losses derived directly or indirectly from the MeraBank Account," was not overly broad); ***Upchurch v. USTNET, Inc.***,

158 F.R.D. 157, 160 (D. Or. Oct. 19, 1994) (granting plaintiff's motion to compel discovery of defendant's financial condition from October 1, 1992 to October 19, 1994, because the requested information was relevant to defendant's counterclaims for tortious interference with contract and unfair competition).

Additionally, Hudson contends in his response that Yessenow failed to make a good faith effort to resolve this discovery dispute as required by Local Rule 37.1, because he failed to explain how the discovery sought related to any claims or defenses at issue in this case. Local Rule 37.1(b) states, "With respect to every other motion concerning discovery, the motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party in an effort to resolve the matter without court action." The letter of November 9, 2009, the telephone conference on December 4, and the emails exchanged between both parties regarding the defendants' objection to Interrogatory 1 may not definitively fulfill Yessenow's Rule 37.1 obligations because of the lack of a "meet and confer" conference. However, the email exchange between counsel clearly demonstrates that Yessenow attempted to do just that, but counsel for Hudson refused.

Because Interrogatory 1 is relevant to Yessenow's defenses against the defendants' counterclaims and he fulfilled his Local Rule 37.1 obligations, Yessenow's Motion to Compel an Answer to Interrogatory 1 is **GRANTED**. Additionally, in light of the lack of response from defendant, Wright, the court **GRANTS** the motion against him also. The defendants are **ORDERED** to respond to the discovery request within twenty-eight (28) days of entry of this order.

Finally, both Yessenow and Hudson seek to obtain attorney fees for the time spent in regards to this motion. "The great operative principle of Rule 37(a)(4) is that the loser pays."

Charles Alan Wright & Arthur R. Miller, 8 *Federal Practice and Procedure* § 2288 at 787 (1970). "Fee shifting when the judge must rule on discovery disputes encourages their voluntary resolution and curtails the ability of litigants to use legal processes to heap detriments on adversaries (or third parties) without regard to the merits of the claims." ***Rickels v. City of South Bend, Ind.***, 33 F.3d 785, 787 (7th Cir. 1994). Any loser may avoid payment by showing that his position was substantially justified. ***Rickels***, 33 F.3d at 787. The failure to disclose is sanctionable and properly remedied by an order compelling discovery. Rule 37(a)(2)(B), (a)(3), and (a)(4); ***Lucas v. GC Services, L.P.***, 226 F.R.D. 328, 329-330 (N.D. Ind. 2004). Rule 37(a)(4)(A) states that the court shall require sanctions based upon the costs of seeking a motion to compel. ***Stookey v. Teller Training Distributors, Inc***., 9 F.3d 631, 637 (7th Cir. 1993)("Rule 37(a)(4) clearly allows for an award of the expenses incurred in obtaining an order to compel, including attorney's fees.") Sanctions under Rule 37(a)(4)(A) are appropriate unless the party's nondisclosure was "substantially justified." In addition, Federal Rule 37(c)(1) states that a party who fails to disclose, provides false or misleading disclosure, or refuses to admit information required by Rule 26(a) without "substantial justification" may be sanctioned unless such failure was "harmless." ***Musser v. Gentiva Health Services***, 356 F.3d 751, 755 (7th Cir.2004); ***Salgado v. General Motors Corp***., 150 F.3d 735, 742 (7th Cir.1998); ***Engel v. Town of Roseland***, 2007 WL 2903196, *6 (N.D. Ind. Oct. 10, 2007). Thus, Rule 37(a) is a fee-shifting rule, and the loser must pay unless it demonstrates that its position was "substantially justified."

Hudson refused to meet and confer and ignored Yessenow's plain, clear assertion that Interrogatory 1 was relevant to his first, second, and fifth affirmative defense. The boilerplate objection to the Interrogatory was not substantially justified as it was "merely a reflexive invocation of the same baseless, often abused litany" that was insufficient in meeting his burden

of showing with specificity that the request was improper.  *Cunningham*, 255 F.R.D. at 478 (citing ***Burkybile. v. Mitsubishi Motors Corp.***, 2006 WL 2325506, *6 (N.D. Ill. Aug. 2, 2006)). In addition, the refusal to meet and confer, thereby forcing Yessenow to file the motion to compel, delayed the litigation.  Therefore, Yessenow's request for attorney's fees is **GRANTED**. Counsel for the plaintiff is DIRECTED to file an affidavit with the court of his costs in preparing the motion and briefs in this matter.

_____

For the foregoing reasons, the plaintiff's Motion to Compel Discovery [DE 73] on December 28, 2009, is **GRANTED**; the defendant's Motion for Hearing Oral Arguments [DE 77] on January 11, 2010 is **DENIED**.

ENTERED This 14th day of July, 2010.

/s/ Andrew P. Rodovich
United States Magistrate Judge